BALCH v. NEWBERRY.

No. 34228. Feb. 3, 1953.

*253 P. 2d 153.*

Hurst & Hurst, Tulsa, for plaintiff in error.

Manatt, Knight & Knight, Tulsa, for defendant in error.

JOHNSON, V.C.J. This is an appeal from a judgment entered in the court of common pleas of Tulsa county. Plaintiff in error, Balch, designated the action for rescission. Defendant in error, Newberry, designated the action as one to recover damages for breach of warranty.

The action was commenced by defendant in error, Brainard Newberry, herein referred to as plaintiff. In his petition as filed plaintiff alleged, in substance, that for several years prior to March 24, 1947, defendant was engaged in the business of breeding and selling thoroughbred pointer bird dogs at Tulsa, Oklahoma, and that plaintiff had for many years been engaged in the business of operating kennels at Arkansas City, Kansas, which facts are well known to both parties; that on or about March 27, 1947, defendant, in consideration of the payment of $800 cash, sold and delivered to plaintiff one certain pointer dog known as "Joker" or "Tornado", whose name was later changed to "Titano"; that plaintiff informed defendant that he desired the aforesaid male dog for breeding purposes, and that he contemplated the use thereof in his aforesaid business and that defendant sold said dog to plaintiff to be used by plaintiff for breeding purposes only; that defendant stated to plaintiff the pedigree of said dog and represented that said dog was in good physical condition, without blemish, and would produce pups of unmatchable strain and quality if mated with bitches of good strain and pedigree.

Plaintiff further alleged that he relied upon the aforesaid representations made by defendant, and believed the same to be true, and that he paid the aforesaid consideration by reason thereof and took said dog to his kennels at Arkansas City, Kansas.

Plaintiff further alleged that he relied upon the implied warranty in said sale that said dog was fit for plaintiff's intended uses and purposes and that from about March 30, 1947, to about August 29, 1949, plaintiff caused said dog to be mated with some six bitches of good strain and pedigree, all owned by plaintiff; that further relying upon said representation plaintiff expended $307 in advertising said dog for breeding purposes in the American Field magazine, a magazine of national circulation among owners and breeders of pointer dogs; that as a result of said advertisement the breeding of bitches was accepted by some eleven named persons at a fee of $100 each.

Plaintiff further alleged that after the lapse of a reasonable time after the breeding of said bitches, it developed that none of said bitches became pregnant as a result of mating same with said dog "Joker" or "Titano," and that said male dog was sterile and wholly unable to produce pups; that thereupon plaintiff notified defendant that said dog was sterile and unable to beget pups, and offered and tendered the return of said dog to defendant and demanded the return of the consideration paid by plaintiff to defendant for said dog, and that said defendant refused to accept said dog and refused to return the consideration paid by plaintiff for the purchase of said dog.

Plaintiff further alleged:

"That said dog was unfit as a sire for breeding purposes, and unfit for the purpose and use intended by the plaintiff in the purchase of said dog, all of which said facts were well known to the defendant, or in the exercise of due diligence, the defendant should have known of such facts. That said dog prior to the foresaid sale by the defendant to plaintiff had suffered a severe illness, accompanied by a high fever and other complications well known to the defendant but unknown to the plaintiff, which rendered said dog unfit for breeding purposes; but, notwithstanding said knowledge, the defendant sold said dog to the plaintiff as a sire or stud dog for breeding purposes only."

Plaintiff renewed the tender of said dog to defendant in his petition and

demanded the return of the purchase price, and further alleged that plaintiff kept said dog for a period of about fourteen months after March 27, 1947, and the reasonable cost of $15 per month or a total of $210 (this was later raised to a period of seventeen months); that plaintiff had expended the sum of $307 in advertising said dog as above stated; that he had expended the sum of $22 for veterinary services and had lost the $100 fee on each of the eleven bitches bred or contracted to be bred to said dog by other persons, and had lost a like sum for each of the six bitches owned by plaintiff, which were bred to said dog. In all plaintiff claimed $2,839.50 damages, including the $800 purchase price. The total amount claimed was later raised to $3,129.50.

The first pleading filed by defendant was a "motion to elect" as follows:

"Comes now the defendant and moves the court to require plaintiff to elect whether he seeks to rescind or affirm the sale."

The motion to elect came on for consideration by the court on August 23, 1948, and the record shows:

"Motion to Elect sustained and plaintiff announces that he elects to rescind the contract sale. Defendant given 10 to plead or 15 to answer."

Thereafter, on September 1, 1948, defendant filed a motion to strike from the petition all allegations, and the prayer with reference to damages other than for the return of the consideration of $800.

On October 2, 1948, the motion to strike was presented to the court and was taken under advisement until October 5, 1948. On October 5, 1948, the motion to strike was overruled by the court. Exception was allowed and defendant was given five days to plead or ten days to answer. On October 7, 1948, time for defendant to plead or answer was extended to ten and twenty days. October 25, 1948, defendant filed his answer denying generally all the allegations contained in the petition excepting only that a pointer dog known as "Joker" was purchased by plaintiff from defendant and in the latter part of March, 1947, for the sum of $800, which is specifically admitted.

The answer further specifically denies that defendant is engaged in the business of breeding and selling pointer dogs and states that, on the contrary, field trial dogs have been his hobby for years. The answer specifically denies that any fraud was perpetrated upon the plaintiff in connection with the sale of said dog, or that any misrepresentation of fact was made, and denies that the dog was sterile at the time of the sale, and finally alleges:

"And for further answer defendant states that the said dog 'Joker' at the time of the sale, was being trained solely as a field trial dog, had considerable value as such and had never been bred, which fact was well known to plaintiff. That as a result of lack of training for a considerable period of time said dog now has little or no value for field trial purposes."

October 28, 1948, plaintiff filed his reply consisting of a general denial of every material allegation in the answer except as such are admitted or qualified in his petition.

The cause was, by agreement, tried to the court without a jury.

The trial court made findings of fact substantially in accord with the allegations of plaintiff's petition, including the various elements of alleged damages other than the $800 purchase price.

The conclusions of law by the court were to the effect that the evidence supported the allegations contained in plaintiffs petition, as amended, and that plaintiff was entitled to recover judgment against defendant in accordance therewith, and that the representations made by defendant to the plaintiff were positive assurances of fact as to the fitness of the dog for breeding purposes and constitute warranties and were designed by defendant to induce plaintiff to purchase said dog, and that

the evidence shows that there was a breach of warranty of the fitness of said dog for breeding purposes, and that plaintiff is entitled to recover from defendant fair compensation for the loss sustained by plaintiff from his effort in good faith to use the dog for breeding purposes, and:

"That defendant expressly warranted the dog as fit for stud purposes and under the ordinary circumstances such express warranty would exclude any implied warranty in such transaction, but by reason of the unusual and pecular (sic) nature of the transaction and the custom of permitting the purchaser to try out said dog for the intended purposes, and the defects and sterile condition of said dog not being obvious and apparent, the usual rule does not apply of excluding the implied warranty and the Court finds that there was an implied warranty of fitness of said dog for the intended purpose of using same as a stud dog.

Judgment was rendered in favor of plaintiff and against defendant in the sum of $2,929.50, and defendant, after unsuccessful motion for new trial, appeals.

The evidence sustains the finding of the trial court that there was an implied warranty by the seller that the dog had the pedigreed qualities of a "stud" which plaintiff had a right to rely upon.

It is undisputed that the dog proved to be sterile and was therefore of no value to the purchaser for such purpose. The dog being of a defective quality, plaintiff was entitled to rescind the contract of sale after his election to so do. Thus, invoking the rule that where a sale of personal property is rescinded for defective quality, the purchaser can recover what he paid under the contract and expenses necessarily incident thereto, but cannot, in addition, recover damages for the breach of the implied warranty of quality. Black on Rescission and Cancellation, vol. 3 (2d Ed.) §695; Frickenschmidt v. Garner, 174 Okla. 559, 51 P. 2d 537. In this case, in the opinion, we said:

"Awards of money to the rescinding party may be made by the court when asked for and when made for proper elements. These are usually referred to as damages, when oftentimes as a matter of fact they partake more of the * * * allowances of compensation for care of the property, or improvements made, etc. * * *"

Under the evidence and circumstances in the case at bar, it was the duty of the court to render judgment only for the amount of the purchase price of the dog of $800 and 17 months at $15 per month, a total of $255, as actual and necessary expense for caring for the dog.

However, the defendant contends that there was no implied warranty that the dog was fertile so as to be used as a stud, because both the seller and buyer were without knowledge as to the capacity of the dog for that purpose; that plaintiff (buyer) was advised by defendant (seller) prior to the sale that the dog had never been bred.

To sustain this contention, defendant cites and relies upon 2 Am. Jur., Animals, §38, p. 723, which reads:

"As a general rule, it may be stated that there is no implied warranty of competency or fitness for breeding purposes in the sale of an animal, although a full price is paid and the sellers know that it is bought for breeding purposes, where there is no fraud or misrepresentation and both parties are alike destitute of knowledge or the means of forming an intelligent judgment as to the fitness or capacity of the animal for that purpose. In such a sale, it seems that custom, policy, and the law unite in applying the maxim caveat emptor, and that the purchaser takes the animal upon his own judgment, risking both the quality and the value of it."

But under foot note 18 of the above-quoted section, reference is made to vol. 24, R.C.L., Sales, §474, p. 202, where an apparent exception to the rule announced in section 38, supra, is stated as follows:

"* * * If, however, the buyer trusts the judgment of the seller, who is engaged in the business of raising, importing and selling stock to be used for breeding purposes, to select one fit for such purpose, it seems that there is an implied warranty of its fitness. * * *"

In section 393, 46 Am. Jur., Sales, page 568, the general rule as stated in 2 Am. Jur., Animals, section 38, supra, is recognized but is qualified by the words:

"However, the purchase of an animal with the knowledge of the seller that it is being bought for a particular purpose gives rise to a warranty of fitness for such particular purpose where the buyer relies upon the seller's skill or judgment that the animal is fit for such purpose. This rule applies to the purchase of animals with the knowledge of the seller that they are being bought * * * for breeding purposes."

See, also, Eden v. Vloedman, 202 Okla. 462, 214 P. 2d 930.

The evidence unquestionably established the fact that defendant (seller) was engaged in breeding and raising pedigreed dogs and had sold plaintiff other highly bred dogs for breeding purposes, including a "stud". The evidence also discloses that the defendant (seller) knew that the dog in the case at bar was bought to be used exclusively for breeding purposes and that plaintiff (buyer) relied upon defendant's (seller's) judgment that the dog was of high breeding and fit for such purpose.

Error in the elements of damage allowed by the trial court has already been noted, but where it appears from the pleadings and the record that items, which are separable, have been erroneously included in the judgment, the cause will not be remanded but the judgment will be modified, and as modified will be affirmed. Hutson v. Illinois Bankers Life Assurance Co., 185 Okla. 573, 95 P. 2d 238. Therefore, the judgment is modified to allow plaintiff to recover the amount paid for the dog, $800, and $255 for actual necessary expense in caring for the dog, and as so modified, the judgment is affirmed.

Under the rule announced in Reinauer v. Davis, 191 Okla. 366, 130 P. 2d 91, and following the statute, 12 O.S. 1951, §978, the costs of this appeal shall be equally divided between the plaintiff and defendant.

HALLEY, C.J., and WELCH, CORN, DAVISON, ARNOLD, WILLIAMS, and BLACKBIRD, JJ., concur. O'NEAL, J., dissents.