**UNITED STATES of America,**
**Appellant,**

v.

**The McNALLY PITTSBURG MANUFAC-TURING CORPORATION, a Kansas corporation, and McNally Pittsburg Manufacturing Corporation, a Kansas corporation, successor to the McNally Pittsburg Manufacturing Corporation of Wellston, Ohio, a Delaware corporation, predecessor, Appellees.**

**No. 7696.**

United States Court of Appeals
Tenth Circuit.

March 1, 1965.

Jerome Fink, Attorney, Department of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, and Meyer Rothwacks, Attorneys, Department of Justice, Washington, D. C., and Newell A. George, U. S. Atty., of counsel, on the brief), for appellant.

Harry A. Morris, Kansas City, Mo., for appellees.

Before PICKETT, HILL and SETH, Circuit Judges.

SETH, Circuit Judge.

The United States has taken this appeal from judgments entered by the District Court for the District of Kansas on jury verdicts. The judgments require the Government to make a refund to the appellee corporations of taxes assessed pursuant to 26 U.S.C.A. § 531 on earnings asserted to be accumulated beyond reasonable needs of the businesses to avoid income taxes on the shareholders. The principal question presented on this appeal is whether or not there was error in the instructions to the jury.

The McNally Pittsburg Manufacturing Corporation during the period in question, which covered generally the years 1956 through 1959, was engaged in the design and construction of coal cleaning and treatment plants and machinery of all sizes. The larger plants required a year or more to construct, and were planned to meet the particular needs of the customer. Many of the contracts provided for deferred payments to appellees of the purchase price. This has been the practice of appellees over a period of twenty or thirty years. The corporation acquired McNally Pittsburg Manufacturing Corporation of Wellston, Ohio, before the period in question, and the corporations were merged in 1961.

During the years in issue, the inventory of the parent corporation turned over approximately 2.97 times per year, and that of the subsidiary (Wellston) approximately 2.32 times per year.[1] The record further shows that the receivables of both corporations were collected on an average of 100 to 110 days.[2] The record shows some substantial fluctuations in the amount of receivables represented by promissory notes as compared to ordinary trade accounts, but the record does not demonstrate that these fluctuations have a particular significance as to the issues nor depart greatly from previous experience. The years in question are within a period of the corporation's steady increase in total current assets.

During the course of the appellees' case, a certified public accountant who appeared as its witness testified to, and there was introduced through him, an exhibit which purported to show that during the years in question the appellees had a substantial deficiency in funds available to pay dividends. This exhibit was admitted, was the basis of objections on the part of the Government, and was ultimately the basis of its written motion to strike. This exhibit and the testimony based upon it included within the category of operating expenses the total cost of all goods sold during each of the several years. The deficiency which was so computed resulted from the deduction of

1. 

| Year: | Parent Corporation: | Subsidiary Corporation: |
|---|---|---|
| 1955 | 2.24 times | 1.58 times |
| 1956 | 4.46 times | 3.13 times |
| 1957 | 3.27 times | 3.87 times |
| 1958 | 2.62 times | 1.75 times |
| 1959 | 2.69 times | 2.56 times |
| 1960 | 2.99 times | 2.31 times |

2.

| 1956 | 82 days |
|---|---|
| 1957 | 88 days |
| 1958 | 134 days |
| 1959 | 126 days |

For the three-year period after 1959, approximately 93 days on an average.

such total operating expenses from the total of net quick assets.[3] This witness testified that this was a method used by some persons to determine dividend availability, but was not necessarily a recognized accounting method. During the course of the objections and argument relative to the exhibit, references were made by counsel and the witness to what purported to be supporting authority for the use of such method. The court admitted the exhibit and denied the Government's motion to strike. Thereafter the Government introduced an exhibit which duplicated the contested exhibit of the taxpayers except that cost of goods sold was not included in operating expenses. Such method or computation showed instead of a deficiency in funds available for dividends that the taxpayers had a very substantial amount of money available for such purpose during each of the years in question as compared to the deficiency shown by appellees' method.[4]

The trial court advised counsel that there would be given an instruction which in essence adopted the taxpayers' position as to the method of determining dividend availability. This instruction as subsequently given stated that the taxpayers were entitled to retain sufficient net quick assets in an amount approximately equal to current operating needs for a year, and that such needs included "the cost of goods sold and operating expenses." [5]

3.

| Year Ended November 30 | Net Quick Assets | Operating Expenses | Overage or Underage |
|---|---|---|---|
| 1955 | $6,908,844 | $ 6,132,389 | $ 776,455 |
| 1956 | 7,225,801 | 10,506,993 | (3,281,192) |
| 1957 | 7,387,424 | 10,926,559 | (3,539,135) |
| 1958 | 7,661,623 | 8,256,738 | ( 595,115) |
| 1959 | 7,930,408 | 9,852,791 | (1,922,383) |
| 1960 | 9,637,245 | 9,748,500 | ( 111,255) |

4. The McNally Pittsburg Manufacturing Corporation And Subsidiaries

| Year Ended Nov. 30 | Net Quick Assets Per Plaintiff's Exhibit 144 | Operating Expenses (Not Including Cost of Goods Sold) | Overage or Underage |
|---|---|---|---|
| 1955 | $6,908,844 | $ 946,169 | $5,962,675 |
| 1956 | 7,225,801 | 1,082,208 | 6,143,593 |
| 1957 | 7,387,424 | 1,164,777 | 6,222,647 |
| 1958 | 7,661,623 | 1,113,016 | 6,548,607 |
| 1959 | 7,930,408 | 1,018,889 | 6,911,519 |
| 1960 | 9,637,245 | 1,252,272 | 8,384,973 |

5. The court instructed (No. 9) in part: "It is contended by plaintiffs and you should consider that if you find that the payment of a dividend at a particular time would leave the corporate taxpayers in this case with insufficient working capital, then the failure to pay a dividend does not result in an unreasonable accumulation of income. A test which may be considered by you relates to the employment of earnings and profits in the conduct of the business, either as cash or working capital; and in this regard a corporation is entitled to retain sufficient net quick assets (the excess of current assets over current liabilities, less bonds

The statutes require a determination to be made as to whether or not the accumulation of earnings and profits is beyond the reasonable needs of the business and its reasonably anticipated needs. 26 U.S.C.A. §§ 531, 532, 533, 537. The acts also provide that if it be found that the accumulation is beyond such needs, it shall be "determinative" of the purpose to avoid income tax on the shareholders unless the taxpayer can show otherwise. There has developed a rough measure of the reasonable needs of a business which has been described as a "rule of thumb." This has been stated by the Tax Court to be an amount sufficient to cover a year's operating expenses. F. E. Watkins Motor Co. v. Comm'r, 31 T. C. 288; J. L. Goodman Furniture Co. v. Comm'r, 11 T.C. 530. This rough measure has also been adopted in several appellate cases including Motor Fuel Carriers, Inc. v. United States, 322 F.2d 576 (5th Cir.); Sterling Distributors, Inc. v. United States, 313 F.2d 803 (5th Cir.); Barrow Mfg. Co. v. Comm'r, 294 F.2d 79 (5th Cir.); Dixie, Inc. v. Comm'r, 277 F.2d 526 (2d Cir.); Smoot Sand & Gravel Corp. v. Comm'r, 241 F.2d 197 and 274 F.2d 495 (4th Cir.). The authorities are not clear nor consistent on the elements of "operating expenses" as used in the rule of thumb. This must be so because it is not an inflexible rule. The particular needs of the taxpayer's business concerned must be examined in each instance. The term "reasonable needs" as used in the statute necessarily means that the measure or standard must be related to a certain enterprise. Sterling Distributors, Inc. v. United States, 313 F.2d 803 (5th Cir.).

The contention between the parties has been whether or not the entire item, "cost of goods sold," should or should not be included in "operating expenses" in an application of the rule of thumb. However we cannot consider the question to be one whether or not "cost of goods sold" as an item should as a matter of principle be included in operating expenses and thereby to define in part the rule of thumb. Instead the cost of goods sold should be considered in the case at bar only as an amount of money, together with all other dollars, and not as a prohibited or permitted item or category all or none of which must be included. The cost of goods dollars are no different from any others. The need is for a total number of dollars, and this is not determined by including or excluding cost of goods sold in its entirety. The possibility must be recognized that the inclusion of the amount of money so represented, or part of it, or none of it, could very well be proper should the evidence as to business needs of the corporation under consideration so dictate, taking into account the funds generated by the collection of notes receivable and trade accounts.

There is nothing in the record before us to show that by reason of the particular nature of the appellees' business an accumulation of a total dollar amount equal to the total operating expenses for a year (including an amount equivalent to the entire cost of goods sold) is reasonable. The rate of inventory turnover and the period of time in which accounts are collected do not so indicate. The treatment of "cost of goods sold" as an item in the manner it was done at the trial excludes a proper consideration of the funds received from sales during the course of each year. The evidence showing bidding for construction projects does not in itself demonstrate a need for

pledged and installment payments on notes receivable not due in twelve months) apart from the surplus accumulation, in an amount approximately equal to current operating needs on an annual basis. Current operating needs, as used in these instructions, when ap-

plied to corporations engaged in fabrication and manufacturing of large commercial projects, requiring extended periods of construction and testing for completion, includes the cost of goods sold and operating expenses."

an accumulation of earnings so measured.

 The record shows that appellees' receivables include a substantial amount of notes compared to trade accounts. This relationship over the years in question shows considerable fluctuation, but the ratio for the years under consideration does not depart greatly from that of prior and subsequent years. The record does not show any substantial change in the policy or practice of the corporation as to the maturity of such receivables. Thus again the record here does not support a need on behalf of the appellees to retain or to accumulate for their reasonable business purposes the total they seek to justify; consequently we hold that the instruction of the trial court in permitting the jury to include such entire amount was erroneous.

Erroneous instructions are grounds for reversal unless it affirmatively appears from the record as a whole that the substantial rights of the parties are not affected. Fed.R.Civ.P. 61; McCandless v. United States, 298 U.S. 342, 56 S.Ct. 764, 80 L.Ed. 1205; Fillippon v. Albion Vein Slate Co., 250 U.S. 76, 82, 39 S.Ct. 435, 63 L.Ed. 853. See Vincent v. Young, 324 F.2d 266, 269 (10th Cir.); Creekmore v. Crossno, 259 F.2d 697, 698 (10th Cir.). The appellees urge that when considered with all other instructions there was no error in the particular one here under consideration. The instructions of the court did permit the jury to consider all factors, and directed it not to consider one factor alone in reaching its decision. The court likewise stated that the above rule of thumb "may be considered." However the inclusion of the entire amount represented by the cost of goods sold was the basic theory of the appellees' case, as demonstrated by exhibits submitted by both parties, and it was erroneous. It was also the subject of lengthy objections and examination of witnesses. Under the circumstances, it cannot be said that the instruction incorporating such theory was harmless.

Reversed and remanded for a new trial.