Carroll W. BRITTON, W. R. Britton and Fred Ballou, Appellants,

v.

Ronald E. MITCHELL, Appellee.

No. 8102.

United States Court of Appeals Tenth Circuit.

June 3, 1966.

John H. Cantrell, Lee B. Thompson and Ralph G. Thompson, of Cantrell, Douglass, Thompson & Wilson, Oklahoma City, Okl., for appellee.

Before LEWIS and HILL, Circuit Judges, and STANLEY, District Judge.

HILL, Circuit Judge.

This is the second phase of a diversity suit commenced by appellee Mitchell and other Michigan citizens against the appellants and others who are citizens of Oklahoma. The complaint alleged two separate causes of action, the first of which we disposed of on interlocutory appeal.[1]

The second cause of action in the original complaint was asserted only by appellee Mitchell. It sought recovery on a $20,000 promissory note allegedly executed by Fred Ballou for himself and as agent for his wife, Rachel Jane Ballou,[2] W. R. Britton and his wife, Carroll W. Britton. The claim further alleges execution of a mortgage to secure the note by Ballou for himself and as agent for the same parties which covered a one-fourth interest in several oil and gas leases in Oklahoma. The relief sought was for judgment on the note plus interest and attorney's fees, foreclosure of the mortgage and appointment of a receiver to operate the leases as provided for in the mortgage.[3]

In their answer, the Brittons admit that Fred Ballou executed the note and mortgage but deny any personal liability thereon. In any event, they assert $2,000 has been paid on the note. Fred Ballou largely adopted the answer of the Brittons and also admitted execution of the note and mortgage but also asserted $2,000 had been paid.

Thereafter, appellee Mitchell filed an amendment to his second cause of action. In it he alleged that because of the previously alleged agency and agreement among the parties, the Brittons received and used the proceeds of the note, that

Carloss Wadlington, Ada, Okl., for appellants.

1. Britton v. Green, 10 Cir., 325 F.2d 377.

2. The action against Rachel Jane Ballou was dismissed by the trial court.

3. That part of the prayer seeking appointment of a receiver was disposed of in the earlier interlocutory appeal. Supra, note 1.

they were the real borrowers of the money and by virtue of having received and used it, they are estopped to deny liability. The Brittons then denied this and contended that Mitchell accepted the note signed only by Fred Ballou with the understanding that he would look to only Ballou for liability.

With the issues thus joined, the matter was tried to a jury. The court directed a verdict against Ballou as to his liability on the note, leaving only for the jury to decide whether $2,000 had been paid thereon and the extent of the Brittons' liability. The jury returned a verdict against all of the appellants here in the amount of $20,000. A motion for a new trial and judgment notwithstanding the verdict was denied and this appeal was taken.

While the appellants have stated fifteen separate grounds of error in their appeal, the real thrust of their argument is three-fold: First, that the evidence was insufficient to sustain liability, second, that the trial court erred in refusing evidence tending to show why the note was signed by Fred Ballou alone, and third, that the jury verdict was premised upon erroneous instructions. We agree with the appellants that the instructions were erroneous which necessitates a new trial.

The evidence adduced at the trial concerning this debt was conflicting. Appellee Mitchell testified he went to Oklahoma in the spring of 1961 to see W. R. Britton and that Britton then asked for a loan of $20,000, promising to secure such loan with a mortgage on one-fourth of the oil and gas property plus a one sixty-fourth bonus on production. Mitchell clearly stated that Fred Ballou did not participate in these discussions and he never agreed to loan any money to Ballou. Britton on the other hand said he only asked Mitchell to loan the money to Ballou and that Ballou signed the note and mortgage because he was personally buying a one-fourth interest in the leases. Mitchell did not make the loan at that first meeting but returned to Michigan.

On April 6, 1961, Britton sent a letter to Mitchell reciting that the mortgage oil payment and note signed by Fred Ballou was enclosed. The letter also stated, "This makes this deal complete if you accept it Ronald [Mitchell]. Fred has to have an answer on this deal by Tuesday." Mitchell admitted receiving the letter containing the mortgage but testified that the note was not enclosed. He did, however, upon receiving the letter, immediately procure two $10,000 cashier's checks, endorsed them to W. R. Britton and forwarded them to Oklahoma. Mitchell said it was the next day thereafter that he received the $20,000 note signed only by Fred Ballou.[4] The parties stipulated that the money was received by W. R. Britton and placed in Carroll Britton's personal account.

When Fred Ballou testified, he was asked the question, "Tell the jury what the deal was in regard to this ¼th interest that the mortgage was on, why you were signing it and what your agreement was about the title to it, to Carroll Britton." The trial court however refused to admit the answer. By their offer of proof the appellants wanted to show by this evidence that the reason Fred Ballou signed the note and mortgage alone was because he was purchasing a one-fourth interest in the property from the Brittons and that title to it would be held in trust by Carroll Britton to be assigned to

4. "Shawnee, Oklahoma, April 5, 1961.
$20,000
    On or before 12 months after date for value received, I, we, or either of us, promise to pay to the order of Ronald E. Mitchell, at his office at 633 South Main St., Ann Arbor, Michigan, Twenty Thousand and no/100 ($20,000) Dollars with interest at the rate of five per cent per annum from date until paid. In case of legal proceedings to collect this note, or in case this note is handed to an attorney for collection, I agree to pay 10 per cent additional to the amount as attorney's fees. The drawers, endorsers and sureties severally waive presentment, protest and notice of protest, and consent that the time of payment may be extended without notice.
P.O. Shawnee, Oklahoma    Fred Ballou"

Ballou when the mortgage to Mitchell was paid off.

■ Insofar as Ballou is appealing from the judgment, we have no hesitancy in approving the directed verdict against him. He admitted execution of the note asserting only that $2,000 had been paid thereon, and the jury determined that fact against him.

The pivotal issue in the lawsuit is the Brittons' liability in the transaction. The court, by its instructions, submitted the question of their liability on two theories: First, by reason of an agency relationship between Ballou and Brittons in execution of the note [5] and second, upon what appears to be a quasi-contractual theory coupled with an Oklahoma statute.[6] The jury returned a general verdict in favor of Mitchell and against the three defendants; therefore, we are unable to ascertain exactly what theory the jury selected to fix liability on the Brittons. If we could say that both theories had legal basis, no problem would exist, but, this we cannot do.

■■ The instruction pertaining to the Brittons' liability on the note was erroneous. It is true the Uniform Negotiable Instruments Law [7] contemplates a signature by an agent,[8] but an undisclosed principal is not liable as a party to a negotiable instrument.[9] The complaint asserted liability on the part of Brittons on the note by reason of agency and it is apparent from the record that the trial judge considered the lawsuit on that theory. But we find nothing in the evidence to substantiate the submission of the Brittons' liability on the note to the jury on this theory. There is nothing in the note concerning agency and from the record we find nothing to indicate

---

5. The court's instruction in this regard specifically states:

"You are instructed that if you find and believe from the evidence in this case that Fred Ballou was acting as the agent for Carroll W. Britton or W. R. Britton or either of them in executing the note sued upon in this case, then you shall return a verdict in favor of plaintiff and against the defendant or defendants Carroll W. Britton and W. R. Britton or either of them, for whom you find the said Fred Ballou was acting, in such sum as you find the said Fred Ballou was acting, in such sum as you find due upon said note."

6. The jury was also instructed:

"In this connection, you are further instructed that if you find that the defendant Carroll W. Britton or W. R. Britton or either of them received the $20,000 from the plaintiff, Ronald E. Mitchell, or if it was used for the use and benefit of either of them and knowingly accepted by them or either of them for their benefit, then you shall return a verdict in favor of Ronald E. Mitchell against either or both Carroll W. Britton and W. R. Britton, which you find to have received said sum of money, to-wit, $20,000.

"You are instructed that the law of Oklahoma provides that voluntary acceptance of a transaction is equivalent to a consent of all of the obligations arising from it, in so far as the facts are known or ought to be known to the persons or person accepting it. (Title 15 Okl.St.Ann. § 75.)

"So if you find and believe from a preponderance of the evidence that Carroll W. Britton or W. R. Britton or either of them accepted the benefits of the transaction involved in this case voluntarily and with knowledge of the facts and knowing the facts which they should have known, or either of them, then your verdict should be for the plaintiff and against the defendants Carroll W. Britton and W. R. Britton or either of them."

7. § 18 of the Uniform Negotiable Instruments Law which was adopted both in Oklahoma, 48 Okl.St.Ann. § 38 (1961), and Michigan (where the notes are payable) Vol. 14, § 19.60, Mich.Stat.Ann. (1959 Rev. Vol.) Comp.Laws 1948, § 439.20 provides in pertinent part, "No person is liable on the instrument whose signature does not appear thereon, except as herein otherwise expressly provided." There is some question whether Oklahoma or Michigan law is controlling. However under either law, this would be the result. See Marks v. Kindel, 6 Cir., 41 F.2d 584.

8. § 19 of the Uniform Negotiable Instruments Law provides in part, "The signature of any party may be made by a duly authorized agent."

9. Restatement (Second), Agency, Vol. I, § 192; Vol. 11 Am.Jur.2nd, Bills and Notes, § 550 and § 560 and the annotations cited therein. Weagant v. Camden, 37 Okl. 508, 132 P. 487.

**926**

that Ballou signed the instrument in a representative capacity for the Brittons. This erroneous instruction clearly affected the substantial rights of appellants and such error must be corrected. See United States v. McNally Pittsburg Manufacturing Corp., 10 Cir., 342 F.2d 198.

■ In his amended complaint, Mitchell has clearly attempted to set forth a cause of action against the Brittons based upon quasi-contract and estoppel. In instructing upon this issue, however, the trial court relied almost entirely upon Title 15 Okl.St.Ann. § 75, supra, note 6. True, the statute does prevent one from ignoring the obligations of a transaction after receiving the benefits; but as applied to these facts, we doubt that merely because the Brittons did eventually receive the $20,000 and used the money on the leases, that this factor would be enough, by itself, to justify liability. The Oklahoma decisions on the statute indicate to us that it was not intended to create a new liability, but only to codify existing common law principles in contract and agency that one may not accept the benefits of a contract or of an unauthorized agent's acts and then repudiate the contract or the agency.[9]

■ If Mitchell is to prevail upon a re-trial of this case, he must do so on a quasi-contractual theory of debt [10] separate and apart from the promissory note signed only by Fred Ballou. In this regard there is authority for the proposition that while a payee or holder of a note may not collect from an undisclosed principal on the note itself, he may reject the note and recover on the original con-

sideration for the contract. See Lady v. Thomas, 38 Cal.App.2d 688, 102 P.2d 396; Stockyards State Bank v. Merchants' State Bank, 97 Kan. 8, 154 P. 240. Also see Vol. 10 C.J.S. Bills & Notes § 34b.

■ In addition, at least one other possibility exists. If the facts reveal Ballou's note was only given as collateral security, a suit may be maintained against the primary obligor even though he did not sign the note. See In re Eton Furniture Company, 3 Cir., 286 F.2d 93, and the cases cited therein.

Because of our disposition of the case, we need not pass upon the other asserted errors and particularly the contention that the court erred in refusing to admit oral testimony offered in support of the Brittons' defense. The record indicates that the court's ruling in that regard was premised upon an erroneous belief that the case involved only the question of the Brittons' liability on the note. This matter may be considered anew on re-trial in light of the real issues to be decided.

Little need be said about the sufficiency of the evidence because of the necessity for a new trial, in which the case will undoubtedly be tried and submitted to a jury in accordance with the views herein expressed and both sides will be given an opportunity to present all competent evidence available bearing upon the issues.

Accordingly, the judgment against Ballou is affirmed but the judgment against W. R. Britton and Carrol W. Britton is reversed and that part of the case is remanded for a new trial.

---

9. See e. g., Livingston v. Blair, 104 Okl. 238, 231 P. 82; Sherbondy v. Tulsa Boiler & Machinery Co., 99 Okl. 214, 226 P. 564; Metropolitan Casualty Ins. Co. of New York v. Heard, 178 Okl. 461, 63 P.2d 720. As to the application in an agency situation see Berry v. Stevens, 168 Okl. 124, 31 P.2d 950; and D.W.L., Inc. v.

Goodner-Van Engineering Co., Okl., 373 P.2d 38.

10. Quasi-contracts in Oklahoma are defined as obligations imposed or created by law without regard to the assent of a party bound on the ground they are dictated by reason and justice. Anderson v. Copeland, Okl., 378 P.2d 1006.