**PARIS BANK OF TEXAS, Merrill Lynch, Pierce, Fenner & Smith, Inc., and Far-Mar-Co., Inc., Defendants/Appellants,**

v.

**D.W. CUSTER and Marilyn J. Custer, Defendants/Cross-Petitioners-Appellees.**

**HUGO MILLING COMPANY, a Corporation, Austin D. Ellis and Doris J. Ellis, Defendants/Appellants,**

v.

**D.W. CUSTER and Marilyn J. Custer, Defendants/Cross-Petitioners-Appellees.**

Nos. 56363, 56376.

Supreme Court of Oklahoma.

Feb. 14, 1984.

Fischl, Culp, McMillin & Kern, Ardmore, McWhirter & Waldrum, Paris, Tex., Crowe & Dunlevy, Oklahoma City, for appellant, Paris Bank of Texas.

Reid E. Robison, McAfee & Taft, Oklahoma City, for appellant, Merrill Lynch, Pierce, Fenner & Smith, Inc.

Hack Welch, Hugo, Edward D. Ellis, Paris, Tex., for appellants, Hugo Milling Co., et al.

Stamper, Otis & Burrage by Joe Stamper, Antlers, for appellees, D.W. Custer and Marilyn J. Custer.

LAVENDER, Justice:

This is an appeal from a judgment entered by the district court on November 24, 1980, at the conclusion of a non-jury trial. Separate petitions in error were filed by Paris Bank of Texas (Paris Bank), Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and Far-Mar-Co., Inc. (Far-Mar) in this Court in Cause No. 56,363, and a separate petition in error was filed by Hugo Milling Company, a Corporation (Hugo), Austin D. Ellis and Doris J. Ellis

(Ellis) in this Court in Cause No. 56,376. By order of this Court, said causes were consolidated under the surviving No. 56,-363. D.W. Custer and Marilyn J. Custer, defendants/cross-petitioners below and appellees herein will be referred to collectively as Custers, and D.W. Custer as Custer.

The facts of the case are not in dispute.

Three tracts of land located in Choctaw County, Oklahoma, are involved herein. One is a tract located within the town of Hugo on which a mill was located, which will be referred to as the Mill Tract. The remaining tracts are agricultural land located outside the town of Hugo and will be referred to respectively as Tract 2 and Tract 3.

On January 2, 1968, Hugo and Austin D. Ellis (Ellis), as owner of Hugo, executed a promissory note for $325,000 and secured the same by a mortgage on the three tracts then owned by Hugo in favor of John Hancock Mutual Life Insurance Company (Hancock). The mortgage was duly recorded in the records of the County Clerk of Choctaw County.

On February 18, 1971, Hugo entered into a land sales contract with Custer wherein Hugo agreed to sell and convey to Custer Tracts 2 and 3 (and other lands not herein involved) for a total price of $525,000. As a part of the agreement, Custer agreed to assume $90,000 of the Hancock mortgage on Tracts 2 and 3 if Hugo was unable to arrange with Hancock a partial release or assumption of the Hancock mortgage, neither of which Hugo was able to do. Pursuant to the contract, Hugo conveyed to Custer Tracts 2 and 3 by warranty deed on February 18, 1971. By reason of Hugo's failure to arrange a partial release of the mortgage or mortgage assumption, Custer never paid the final $90,000 of the purchase price for the tracts.

Thereafter, Hugo brought suit against Custer to rescind the entire transaction, and judgment was entered by the district court on July 9, 1974, wherein the district court found and determined that the contract between Hugo and Custer involving Tracts 2 and 3 required Hugo to obtain a release of the Hancock mortgage on Tracts 2 and 3, or, alternatively, required Hugo to negotiate a mortgage assumption agreement with Hancock whereby Custer would be permitted to assume $90,000 of the mortgage indebtedness on Tracts 2 and 3 only, and that the remainder of the mortgage indebtedness to Hancock would not be a lien against Tracts 2 and 3. This judgment further provided that in the event Hugo secured the partial release of the mortgage Custer would be obligated to pay Hugo the sum of $90,000. In addition, the court gave Hugo a lien upon Tracts 2 and 3, in the event that the release was obtained, for the payment of the $90,000 with interest thereon at 8% from February 8, 1971, until Hugo arranged the mortgage release. It is undisputed that Hugo never procured the partial release of the mortgage or arranged a partial assumption of the mortgage by Custer. The judgment entered by the district court was not appealed and became final.

On December 14, 1976, Hugo gave a promissory note in the amount of $325,000 to Paris Bank, and also executed and delivered to Paris Bank a second mortgage covering the Mill Tract to Hancock. In consideration of Paris Bank's abstaining from foreclosure, and as additional security for the note from Hugo to Paris Bank, Hugo executed a collateral assignment in favor of Paris Bank of any and all rights it had under the district court judgment and in the sales contract underlying that judgment.

Alleging default on its note and mortgage, Hancock filed an action in the district court for judgment on the note and foreclosure of its mortgage on the three tracts. During the pendency of the Hancock foreclosure proceedings, and on September 24, 1979, Custer entered into an agreement with Hancock to purchase the lien indebtedness of Hancock on Tracts 1, 2 and 3, and to assume Hancock's position on the mortgage. Thus, Custers became subrogated to the rights of Hancock on the Hancock note and mortgage on Tracts 1, 2 and 3 and

under the agreement continued the foreclosure proceedings begun by Hancock.

On September 8, 1977, Hugo and Ellis executed and delivered to Far-Mar their note in the principal sum of $59,953.05, together with a mortgage covering the Mill Tract, including all fixtures and mill equipment thereon, and said mortgage was recorded in the Records of Choctaw County.

Merrill Lynch obtained a judgment against Hugo and Ellis on March 6, 1978, in the District Court of Dallas County, Texas, and the judgment was filed in Choctaw County.

In the judgment entered by the court below on November 24, 1980, and from which the appeals were taken, the trial court:

1. Quieted title in Custer to Tracts 2 and 3, and adjudged all other defendants in the action to have no right, title or interest in said tracts.

2. Rendered judgment foreclosing the mortgage on the Mill Tract establishing priorities of Custer first, Paris Bank second, then subsequent lien holders. The Mill Tract was ordered sold at a sheriff's sale and the proceeds, after payment of costs of the action and ad valorem taxes, to be applied:

a. to payment of the Custer lien;
b. to payment of the lien of Paris Bank;
c. to payment of the lien of Far-Mar;
d. to the payment of the lien of Merrill Lynch; and
e. the balance, if any, to be paid to the Court Clerk pending further orders of the court.

3. Rendered a personal judgment against Paris Bank and in favor of Custer for the balance due on the Hancock mortgage, less $90,000 plus interest at 7% from February 8, 1971, on the $90,-000.

4. Determined that the mortgage purchased by Custer on Tracts 2 and 3 did not merge with the fee simple title of Custer in these tracts; that Custer need not proceed against these tracts to satisfy its lien; and the right of Custer to enforce the mortgage against Tract 1 (Mill Tract) has not been extinguished.

5. Rendered judgment that Custer was entitled to a lien against the Mill Tract in the amount Custer paid to Hancock for the release of the mortgage on all three tracts, with an offset for the $90,000 attributable to Tracts 2 and 3 (less $13,500 allowed to Custer as attorney fees), plus an additional lien of $11,-664 as attorneys' fees and plus an additional $10,000 attorneys' fees, together with interest at 10% per annum from the date of judgment.

The various specifications of error postulated by the parties appealing will be considered in order.

## I.

## THE TRIAL COURT ERRED IN ITS CONCLUSION THAT PARIS BANK ASSUMED ANY OBLIGATIONS OF HUGO IN ACCEPTING THE ASSIGNMENT OF THE RIGHTS UNDER THE CONTRACT AND JUDGMENT.

The Assignment of Contract and Judgment entered into by Hugo in favor of Paris Bank dated February 18, 1971, provides in pertinent part:

"(Hugo) does hereby sell, assign, and transfer and set over to (Paris Bank)—any and all *rights* which (Hugo) may have under said judgment *and to any and all sums of money that may be had* or obtained by means thereof, or on any proceedings to be had thereupon and any and all liens and levies securing the same.

" * * * (Hugo) will not collect or receive the ($90,000, plus interest due under the judgment) or any part thereof or any other rights thereunder, nor release or discharge said judgment but will save and reserve the same unto the assignee, (Paris Bank).

" * * * (Hugo) hereby sells, assigns, transfers and sets over unto (Paris Bank) —any and all rights due (Hugo) under

and by virtue of the Real Estate Sales Contract dated February 18, 1971 (which was involved in the lawsuit which resulted in said judgment). (Hugo) transfers any and all of its *rights* in and to said Real Estate Sales Contract aforesaid *and any and all sums of money that may be had* or obtained by means thereof, or on any proceedings to be had thereon and any and all liens and levies securing the same." (Emphasis supplied.)

It is undisputed that in accepting the collateral, Paris Bank intended to obtain additional collateral for its preexisting loan to Hugo. It is also apparent that nothing in the assignment expressly bound Paris Bank to accept any of the obligations of Hugo to Custer contained in the Assignment of Contract and Judgment, or in the judgment which followed.

In apparent reliance upon 15 O.S.1981, § 75, the trial court concluded that by the assignment and its acceptance thereof, Paris Bank thereby became obligated to Custer to pay the entire mortgage balance due and owing by Hugo to Custer, although Custer was not a party to the Assignment of Contract and Judgment assignment. Reliance upon 15 O.S.1981, § 75 was misplaced. That section provides: "A voluntary acceptance of the benefit of a *transaction* is equivalent to a consent to all the obligations arising from *it* so far as the facts are known, or ought to be known to the person accepting." (Emphasis supplied.)

The assignment from Hugo to Paris Bank was not of the mortgage contract between Hugo and Custer, but was of the sums due Hugo from Custer as evidenced by the Real Estate Sales Contract dated February 18, 1971, between Hugo and Custer and of the judgment resulting therefrom. The assignment of the sums due to Hugo was the "transaction" in the sense

that the word is used in the statute, not the mortgage agreement between Hugo and Custer. Paris Bank *could* have contracted to assume and pay the entire mortgage indebtedness of Hugo to Custer. But the question before us is whether by taking an assignment of sums due from Custer to Hugo by way of collateral to a preexisting debt and judgment Paris Bank *did* agree to pay the entire mortgage indebtedness of Hugo to Custer. We hold that it did not.

In construing a California statute identical to 15 O.S.1981, § 75, it was held in *Fruitvale Canning Co. v. Cotton*[1] (955): "This section, however, has generally been held to apply only where the person accepting the benefit was a party to the original transaction. (Citations omitted.)"

In *Britton v. Mitchell*,[2] the U.S. Court of Appeals, in construing § 57, stated that this section was not intended to create new liability but only to codify existing common-law principles in contract and agency that one may not accept the benefits of a contract or of the unauthorized agent's acts and then repudiate the contract or agency. Thus, the case before us falls within the general rule summarized in 6 Am.Jur.2d Assignments § 109 which states:

"It is a general principle that an assignment of a contract does not operate to cast upon the assignee the duties and obligations or the liabilities imposed by contract on the assignor, in the absence of the assignee's assumption of such liabilities. As the assignment does not bring together the assignee and the other party to the contract, there cannot be the meeting of minds essential to the formation of a contract."[3]

We therefore hold that the assignment of the sums due from Custer to Hugo under the Real Estate Sales Contract dated February 18, 1971, between Hugo and Custer

---

1. 115 Cal.App.2d 622, 252 P.2d 953 (1953).

2. (10th Cir.1966) 361 F.2d 922.

3. See also, *Standard Savings & Loan Ass'n v. Acton,* 178 Okl. 400, 63 P.2d 15 (1963) wherein it was held in Syllabus 2 by the Court: "A husband who receives and accepts from his wife portions of the proceeds of a loan made to her upon their homestead will not be held to have adopted or ratified a mortgage on the homestead executed by his wife, he not having participated in the transaction, ...."

and of the judgment resulting therefrom did not under the provisions of 15 O.S.1981, § 75 constitute an acceptance by Paris Bank of the obligation of Hugo to pay the entire balance due from Hugo on its mortgage to Custer. And since Paris Bank did not agree to assume and pay the mortgage indebtedness of Hugo to Custer, the trial court erred in rendering a judgment in favor of Custer and against Paris Bank for the balance due under the Hugo mortgage to Custer.

## II

### THE TRIAL COURT ERRED IN ITS CONCLUSION THAT THE MORT- GAGE PURCHASED BY CUSTER ON TRACTS 2 AND 3 DID NOT MERGE WITH THE FEE SIMPLE TITLE OF CUSTER IN THESE TRACTS.

It will be recalled that on February 18, 1971, Hugo conveyed to Custer Tracts 2 and 3 by warranty deed. Thereafter, on September 24, 1979, and during the pendency of the foreclosure proceedings brought by Hancock to foreclose its mortgage on all three tracts, Custer purchased from Hancock the lien indebtedness owned by Hancock on all three tracts and became subrogated to Hancock's rights in the three tracts and in the foreclosure proceedings.

The trial court held and determined Custer's title to Tracts 2 and 3, as the mortgagee thereof, did not become merged with Custer's title to Tracts 2 and 3 acquired by Custer by deed from Hugo dated February 18, 1981. The trial court concluded, none of the appellants had any right or lien upon Tracts 2 and 3 (owned by Custer) acquired subsequent to the warranty deed from Hugo to Custer except the contingent right of Paris Bank to receive the $90,000 with interest if, and only if, Hugo or Paris Bank fully paid the Hancock mortgage which was acquired by Custer. The contingency upon which Custer might have owed Paris

Bank the $90,000 has not occurred, and title of Custer should be quieted as against Hugo and Paris as to Tracts 2 and 3.

 In a case of equitable cognizance, a judgment will be sustained on appeal unless it is found to be against the clear weight of the evidence or is contrary to law or established principles of equity. In making such determination on appeal, this Court must examine the record and weigh the evidence.[4]

 It was a well established, inflexible rule under the common law that a merger always took place when a greater and a lesser estate coincided and met in the same person in one and the same right without any intermediate estate. In its inexorable application, the intent of the parties as to whether merger occurred was immaterial.[5] Since the intercession of courts of equity, a more modern rule has evolved, i.e., that equity will prevent or permit a merger of estates according to the intention of the parties, either actually proved or implied from the fact that merger would be against the interest of the party in whom the several estates or interests have united, and will prevent a merger where the rights of innocent third persons, who are strangers to the transaction, will be prejudiced by merger.[6]

While the common-law rule was applied in the case of *Coline Oil Co. v. Cannon,*[7] the equitable rule was applied in the case of *Ferguson v. Hilborn.*[8] Although predicated upon the ruling in *Coline, supra,* in *Ferguson v. Hilborn, supra,* we said: "... it is sufficient to note that the doctrine of merger does not apply where the parties do not so intend. And, whether merger occurred principally is a question of intention, and parol testimony is permissible to show the parties' intention at the time of the transaction."

4. *Story v. Hefner,* Okl., 540 P.2d 562 (566) (1975).

5. 28 Am.Jur.2d Estates, § 375; 143 A.L.R. 95.

6. Id.

7. 144 Okl. 133, 289 P. 763 (1930).

8. Okl., 402 P.2d 914 (1965).

In the case before us, the record is silent as to the intention of Hancock, the grantor, although it may be fairly inferred that Hancock was indifferent as to whether merger of the estates in Custer occurred, since by the transaction Hancock was completely removed from the properties and from the foreclosure proceedings. On the other hand, Custer was prompted by Custers' need to forestall pending foreclosure proceedings and to succeed to Hancock's position in order to protect Custers' position.

In construing what is now codified as 42 O.S.1981, § 22,[9] this Court said in *Yoder v. Robinson*[10] (145 P. 776): "The statute relied upon is merely declaratory of the old doctrine of merger and is subject to the same exceptions." *Yoder* further expressed the view that in the absence of an intention that merger occur expressed in the instrument which vests the two estates in the grantee or assignee, if under all of the circumstances of the transaction it appears for the benefit of the party acquiring both interests that merger occur, or not occur, then it will be presumed that the intent most beneficial to him will be inferred. The view thus expressed has been many times reiterated by the Oklahoma appellate courts.[11]

■ Custer had acquired title to Tracts 2 and 3, subject to the Hancock mortgage, at the time Custer took an assignment of the Hancock mortgage. It being to Custer's advantage that a merger occur upon Custer's taking an assignment of the Hancock mortgage, we presume that the lien assigned by Hancock to Custer on Tracts 2 and 3 merged into Custer's previously acquired title to the tracts. This left Custer in the posture of owning fee title to Tracts 2 and 3, and of being the assignee of Hancock's mortgage on the Mill Tract.

Title 24 O.S.1981, § 4 provides: "Where a creditor is entitled to restore [resort] to each of several funds for the satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons."

Upon the merger being effected as to Tracts 2 and 3, Custer's only resort was to the encumbered Mill Tract. Therefore 24 O.S.1981, § 4 cannot apply.

### III

### THE TRIAL COURT DID NOT COMMIT REVERSIBLE ERROR IN NOT ALLOWING INTEREST ON THE $90,000 SET–OFF ALLOWED AGAINST THE CUSTER LIEN.

■ The trial court determined that in order to prevent unjust enrichment of Custer by reason of Custers' not having paid the last $90,000 of the purchase price specified in the land sales contract between Custer and Hugo dated February 18, 1971, said $90,000 would be set-off against the Hugo indebtedness to Custer (and likewise set-off against the Paris Bank indebtedness to Custer). Having heretofore determined that there is no indebtedness from Paris Bank to Custer, the alleged error in not allowing interest on the $90,000 set-off against the alleged Paris Bank debt to Custer has become moot.

■ Hugo alleges error on appeal in not allowing Hugo interest on the $90,000 set-off against the Hugo debt to Custer. However, no good and valid reason for allowing interest is suggested in the briefs, and no authorities are cited in support of Hugo's

---

9. 42 O.S.1981, § 22 provides: "The sale of any property on which there is a lien, in satisfaction of the claim secured thereby, or, in case of personal property, its wrongful conversion by the person holding the lien, extinguishes the lien thereon."

10. 45 Okl. 165, 145 P. 775 (1915).

11. *Dowling v. Springer*, 186 Okl. 656, 100 P.2d 278 (1940); *American First Title & T. Co. v. First Fed. S. & L. Ass'n*, Okl., 415 P.2d 930 (1965); *Citizens Sec. Bank of Bixby v. Courtney*, Okl.App. 572 P.2d 1302 (1977).

assertion. Assignments of error presented by counsel in their brief, unsupported by convincing argument or authority, will not be considered on appeal, unless it is apparent, without further research that they are well taken.[12]

Where, as here, the facts are not in dispute and conclusions of law applied to the facts in a purely equitable action are partly incorrect, the decree entered by the court below will be modified on appeal to conform to correct conclusions.[13]

The judgment entered by the court below, as modified herein, is affirmed.

BARNES, C.J., SIMMS, V.C.J., and HODGES, HARGRAVE, OPALA and WILSON, JJ., concur.

12. *Bradley v. McCabe,* Okl., 438 P.2d 468 (1967).

13. *State ex rel. Field v. Hess,* Okl., 540 P.2d 1165 (1975); *Kunkel Plumbing and Heating Company v. Estes,* Okl., 346 P.2d 185 (1959); *Balch v. Newberry,* 208 Okl. 46, 253 P.2d 153, 35 A.L.R.2d 1267 (1953); *Barnett v. Love,* 118 Okl. 31, 248 P. 645 (1926); *Wiggins v. Wiggins,* 176 Okl. 221, 55 P.2d 119 (1936); *Jolly v. Fields,* 65 Okl. 201, 166 P. 117 (1917); *Hawkins v. Boynton Land, Mining & Investment Co.,* 59 Okl. 30, 157 P. 753 (1916).