2000 OK CIV APP 140

**Jane Annette DUFFY, Plaintiff,**

v.

**Robert McDowell COPE, McAllister & Reed, Inc., Crockett's Smokehouse, Inc., and Crockett's Smokehouse of S. May Ave., Inc., Defendants,**

**Robinson & Hoover, Appellant/Counter–Appellee,**

v.

**Durbin, Larimore & Bialick, P.C., Appellee/Counter–Appellant.**

**No. 93150.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 11, 2000.

Certiorari Denied Dec. 5, 2000.

---

Michael R. Hoover, Robert E. Norman, Oklahoma City, Oklahoma, for Appellant.

Gary C. Bachman, Margo M. Brown, Oklahoma City, for Appellee.

## OPINION

CARL B. JONES, Presiding Judge:

¶1 This appeal involves two law firms disputing the trial court's division of a $340,000.00 contingent fee. The court awarded $140,000.00 to attorneys, Robinson & Hoover (Hoover), and $200,000.00 to the firm of Durbin, Larimore & Bialick (DLB). Hoover appealed and DLB has counter-appealed.

¶2 The Plaintiff, Jane Duffy, retained Hoover shortly after being involved in a September, 1996 automobile accident with Defendant, Robert Cope, an employee of Defendant, Crockett's Smokehouse. Hoover filed a personal injury action against the Defendants in February, 1997. Hoover's fee agreement with Duffy was 40% of any recovery. For the next year and one-half Hoover investigated the accident, pursued a workers' compensation case, did formal discovery, moved to compel discovery responses, responded to Defendants' Motions for Summary Judgment, participated in mediation sessions, engaged in settlement negotiations and attended pre-trial conferences.

¶3 The first mediation occurred in March, 1998. It was unsuccessful with Plaintiff's demand at over $1,000,000.00, and Defendants offering $125,000.00. A second mediation was held in April, 1998. At that time Defendant Cope's attorney advised Hoover he had the authority to offer his $250,000.00 auto liability policy limits but that Duffy would have to sign a covenant not to execute against Cope for collection of any judgment she might get in excess of $250,000.00. After discussing this with Ms. Duffy, Hoover advised Cope's attorney that they could enter into that agreement. Hoover also advised one of the attorneys representing the Defendants that Duffy's "bottom line" was $600,000.00. These actions taken by Hoover were, according to him, with Duffy's knowledge and permission. The mediation was unsuccessful.

¶ 4 Several days later, on April 20, Ms. Duffy delivered a letter to Hoover terminating his representation of her and requesting his file.[1] She hired DLB and entered into a 40% contingent fee agreement with them. Hoover was initially reluctant to give his file to DLB without assurances of getting paid. Within a few days, however, the file was provided to DLB, who entered their appearance on April 27, 1998. On April 28, the Defendants' insurer gave one of Defendants' attorneys authority to settle with Plaintiff for up to $600,000.00.

¶ 5 Trial was scheduled just a month or so away. DLB was able to get a continuance of the trial date, researched insurance coverage issues, interviewed doctors and the investigating police officer, obtained new and updated medical reports and obtained copies of insurance policies. A third mediation was held in June, 1998. At that mediation, the case was settled for $850,000.00. At the hearing on the fee dispute Hoover contended that he was entitled to 40% of $600,000.00 and DLB was entitled to 40% of the remaining $250,000.00. Hoover argues that while he was still Ms. Duffy's attorney the Defendants' insurer had authorized settlement authority of up to $600,000.00, although only $250,000.00 had actually been offered while Hoover was involved. DLB took the position that Hoover mishandled the case and that of the $340,000.00 for attorney fees, Hoover should only receive $75,000.00.

¶ 6 The trial court, in a finding of fact, stated that the entry of DLB into the case on behalf of Ms. Duffy was a significant factor in Defendants' insurer's decision to extend settlement authority of $600,000.00. The trial court concluded that Hoover's agreement to enter into the covenant not to execute was not in his client, Duffy's, best interest and therefore her termination of Hoover was for "just cause". The $340,000.00 attorney fee fund was divided $140,000.00 to Hoover and $200,000.00 to DLB.

¶ 7 On appeal, Hoover contends the $140,000.00 awarded to him was not a reasonable proportion of the contingent fee fund, the fee awarded was against the weight of the evidence and contrary to law and that he was not discharged for cause. DLB's counter-appeal contends that Hoover should have been awarded no fee because he was terminated for cause, that any fee awarded to Hoover should have been on the basis of criteria set forth in *State ex rel. Burk v. City of Oklahoma City*, 1979 OK 115, 598 P.2d 659, and that Hoover's fee was clearly against the weight of the evidence and contrary to law and equity. An action to enforce an attorney's lien, which this is, is an equitable matter. *Martin v. Buckman*, 1994 OK CIV APP 89, 883 P.2d 185, 192, 196. A judgment in a case of equitable cognizance will be sustained on appeal unless it is found to be against the clear weight of the evidence, or is contrary to law or established principles of equity. *Paris Bank of Texas v. Custer*, 1984 OK 5, 681 P.2d 71.

¶ 8 In the instant case, the trial court had to determine how to legally and equitably divide the $340,000.00 attorney fee fund between two law firms. It is true that the trial court concluded Hoover's termination was for "just cause", but there is no controlling authority that that would preclude Hoover from recovering a portion of the fees. The Oklahoma case closest on point is *Martin v. Buckman*, supra. There, although the first attorney was terminated "without cause", it instructs that in a contingent fee case the terminated attorney is entitled to as much of the contingent fee fund as he deserves for his services. *Id.* at 193–94. "The main objective is to evaluate the totality of

---

1. Ms. Duffy's letter states:
   Dear Mr. Hoover,
   I now release you from our contract to represent me. I request all records, itemized accounting, case file, medical bills and reports and any other pertinent documentation by April 27. I would like to leave today with as many of these documents as possible. I made my choice to take control of my life after much recovery from the accident, and I feel I have not given enough attention to this lawsuit. I do truly regret we did not come to complete understanding, but I must consider my own interests and protection. Your cooperation is important to me.
   Thank-you
   Jane A. Duffy

the involved lawyers' efforts in terms of their proportional contribution to the creation of the fee fund to be divided." *Id.* at 195.[2]

¶ 9 Hoover, in his representation of Duffy, worked the case for over a year and a half through the final pre-trial conference. DLB represented the Plaintiff for only five weeks. Hoover is entitled to compensation for the work performed. Because the attorney fee fund was the result of the contingent fee agreements and the ultimate settlement amount, the most immediate inquiry is not one of hours spent or hourly rates, but rather the attorneys' respective contributions to the creation of the settlement fund. Therefore, even if the Plaintiff, Duffy, had good reason to fire Hoover as her attorney, he need not forfeit his right to be compensated for his work.

¶ 10 There is no doubt that when DLB became involved in the case the settlement value to the Defendants and their insurer rose significantly. Although Hoover had only secured an offer of $250,000.00, it is quite likely that more would have been forthcoming in light of the fact that Defendants' attorney had been given authority of $600,000.00 just prior to DLB's involvement. But clearly, that $600,000.00 had not yet been offered to the Plaintiff at the time she fired Hoover.

¶ 11 Under these facts, there is no way to be mathematically precise as to the two firms' contributions to the ultimate settlement amount of $850,000.00. The division of the $340,000.00 fee fund appears to have been fair and equitable. The $140,000.00 awarded to Hoover is 40% of $350,000.00. The $200,000.00 awarded to DLB is 40% of $500,000.00. Although the trial court's order does not say this specifically, one can infer that $350,000.00 of the settlement amount is being attributed to Hoover and $500,000.00 is being attributed to DLB. This is neither contrary to law or equity nor against the clear weight of the evidence.

2. This is consistent with the Oklahoma Rules of Professional Conduct, 5 O.S. Supp. Ch. 1, App. 3–A, which provides in the Comment to Rule 1.16 that, "A client has a right to discharge a

¶ 12 The order of the trial court is affirmed in all respects.

¶ 13 AFFIRMED.

¶ 14 GARRETT, J., and BUETTNER, J., concur.

lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services."