STATE EXCHANGE BANK OF PARKERSBURG, Appellant, v. MATTIE IBLINGS et al., Appellees.

**FORCIBLE ENTRY AND DETAINER: Default Judgment.** Judgment 1 by default in forcible entry and detainer proceedings is not a bar to an action for damages consequent on the ouster, when plaintiff *fraudulently* secured his apparent right to institute and maintain the action,—i. e., where plaintiff fraudulently entered his own name in a sheriff's certificate of sale, and took the deed in his own name.

**ESTOPPEL: Who May Not Plead.** A party who, by his own fraud, 2 places himself in a prejudicial position may not fortify himself by a plea of estoppel based on what the victim of the fraud did or did not do, especially when the conduct of the victim did not in any manner influence such wrongdoer.

**TRIAL: Misconduct in Argument—Belated Objection.** Principle reaf- 3 firmed that objections to an argument are not timely when made for the first time in a motion for new trial.

**DAMAGES: Exemplary Damages—When Nonallowable.** An instruction 4 which forbids a return of actual damages necessarily forbids a return of exemplary damages.

*Appeal from Butler District Court.*—C. H. KELLEY, Judge.

FEBRUARY 9, 1921.

VERDICT of jury on defendants' counterclaim, awarding damages for the alleged wrongful and malicious dispossession of defendants of certain real estate. Plaintiff appeals.—*Affirmed on condition.*

. *W. T. Evans* and *Courtright & Arbuckle,* for appellant.

*J. V. Gregory, C. J. Rudolph,* and *Edwards, Longley, Ransier & Harris,* for appellees.

DE GRAFF, J.—Originally plaintiff instituted an action at law against the defendants on a promissory note for $822.55, with interest, and subsequently an amended and substituted petition in equity was filed, in which judgment was asked for the amount due on said note, and for the foreclosure of a lien which plaintiff claimed to have upon the real estate of which defendants were dispossessed.

Defendants filed an amended and substituted answer and counterclaim in eight different counts, some of which were later withdrawn by the defendants, and some were eliminated by the rulings of the court.

Count IV of defendants' counterclaim presented the issue whether the plaintiff bank, in the redemption of the sheriff's certificate of sale of the land in question, charged the defendants $1,333.87, or the sum of $1,200. Count V, as amended, presented the issue whether the plaintiff bank, acting as the agent of the defendants to make redemption from the sheriff's sale, made such redemption with the intent to defraud defendants, and thereby caused damages to said defendants. Upon the trial of this cause, plaintiff bank confessed liability in favor of defendants in the amount of $133.87, with interest, without admitting any of the allegations contained in Count IV of defendants' counterclaim.

The jury, in answer to special interrogatories submitted, found that the reasonable rental value of the premises for the time in question was $81.67, and that the reasonable value of the crops and vegetables growing on said premises was $300, and

assessed exemplary damages in the sum of $3,750. Through error in computation, the jury, in answer to Special Interrogatory 3, allowed actual damages on certain claims in the sum of $850. The trial court required the defendants to remit this sum (which was done), and judgment was entered against plaintiff bank in the sum of $4,278.94.

Briefly stated, the material facts of this case are as follows: The defendants were the owners of an 8-acre tract of land near the town of Parkersburg, Iowa, and for a long time had been clients of the plaintiff bank. On the 26th day of November, 1915, the 8-acre tract was sold to one Ralph B. Slippy, for the sum of $1,301.87, on a general execution, and a sheriff's certificate of sale issued accordingly. On March 1, 1916, the defendants moved onto this land, and made it their home. About this time, C. C. Wolf, cashier of the plaintiff bank, learned of the embarrassing financial condition of the defendants and of the existence of the sheriff's certificate of sale. After some conversation between Wolf and the defendant C. A. Iblings, arrangements were consummated whereby the certificate of sale held by Slippy should be purchased and the claim satisfied, and for this purpose the bank was authorized to use the funds of the defendants then on deposit in plaintiff bank, which amounted to $3,228. It further appears that, pursuant to this agreement, on March 15, 1916, the bank paid Slippy $1,200 from the defendants' funds, and took an assignment in blank of the certificate of sale, charging the account of defendants in the sum of $1,333.87.

Subsequently, and without authority from defendants, Cashier Wolf inserted the name of the plaintiff bank in the assignment, and, on July 10, 1917, presented this certificate of sale to the sheriff, who issued a sheriff's deed to the plaintiff. On the 4th of August, 1917, the plaintiff, by an action of forcible entry and detainer, obtained judgment of ouster against these defendants, and four days later, the defendants were, in fact, ousted from the possession of the premises by the constable of the justice court issuing the writ. Thereupon, plaintiff leased the land to one Knipp, at which time there was on the premises a crop consisting mostly of corn, garden truck, and vegetables. On August 8, 1917, defendants made a written demand on the plaintiff bank

for a return and a reconveyance of the tract of land, which was refused by the plaintiff.

Prior to the trial of this cause, plaintiff filed its substituted petition in equity, alleging that it held the premises in question "as security" for the payment of the obligations of the defendants to the bank, represented by the promissory note upon which the plaintiff originally sued. The defendants then amended Count V of their counterclaim, and asked for actual and exemplary damages, in that "the plaintiff wrongfully and maliciously dispossessed the defendants from said premises."

Plaintiff bank offers as its excuse and justification for the appropriation of the defendants' real estate in the manner in which it was done, that the defendant C. A. Iblings had previously told Cashier Wolf that he might want to borrow money from the bank, and that, if he did, the bank could hold the certificate of sale as security; that, on the strength of this oral arrangement, the bank had loaned the defendants $882 on their promissory note. It is admitted, however, and the record so shows, that no such arrangement or agreement was ever had with defendant Mattie Iblings, who at that time held the title to the homestead. Furthermore, the husband denies that there ever was such an arrangement or agreement.

The primary contentions relied upon by appellant for reversal are: (1) That the judgment of ouster in the forcible entry and detainer action constituted an adjudication as to the right of possession of the real estate. (2) That the defendants are estopped, by reason of their acts and conduct, from claiming damages. (3) That the defendants' counsel were guilty of misconduct in argument to the jury. (4) That the exemplary damages awarded by the jury are unwarranted.

These contentions necessarily involve the correctness of the rulings of the trial court in the admission and exclusion of testimony and the instructions given and refused by the court.

I. *Does a judgment by default in an action of forcible entry and detainer constitute a bar to a claim for damages,*

1. FORCIBLE ENTRY AND DETAINER: default judgment. *when the ouster is predicated on the fraud of plaintiff in securing his apparent right to institute the action?*

Plaintiff's claim on the error assigned is that "defendants

pleaded a cause of action barred and estopped by the judgment of the justice court, wherein the plaintiff was adjudicated to have the right of possession of the property in question, and under whose order it was placed in possession thereof, and that, rightful possession of said property by the plaintiff having been determined and adjudicated by a court having jurisdiction of the parties and of the subject-matter, such possession could not, therefore, be made a basis of a claim for damages on the theory of wrongful possession."

The fallacy of this claim is in the line that "the plaintiff was adjudicated to have the *right of possession* of the property in question." The action of forcible entry and detainer is a summary proceeding, and the only question involved is the fact of possession. This action cannot be made a substitute for an action of right. *Herkimer v. Keeler,* 109 Iowa 680. The *right of possession* cannot be determined in an action of forcible entry and detainer. The question involved is the fact of possession, not the right. *Cagwin v. Chicago & N. W. R. Co.,* 114 Iowa 129; *Delmonica Hotel Co. v. Smith,* 112 Iowa 659; *Denecke v. Miller,* 142 Iowa 486.

In expressing this legal principle, the language used in the opinions in some of the prior decisions of this court is not happily chosen, and the distinction between *possession* and the *right of possession* is not made. See *Chambers v. Irish,* 132 Iowa 319.

What are the requisites to form a complete legal title? The most imperfect stage or degree is *mere possession* or actual occupancy of an estate, with or without an apparent right to hold or continue such possession. This implies that the rightful owner may put an end to such possession by selecting one of several legal remedies. The next step to a good and perfect title is the *right of possession,* which may exist in one person, and the actual possession in another. Blackstone says:

"If a man be disseised, or otherwise kept out of possession, * * * though the actual possession be lost, yet he has still remaining in him the *right* of possession. * * * But this right of possession is of two sorts: an *apparent* right of possession, which may be defeated by proving a better; and an *actual* right of possession, which will stand the test against all opponents." Blackstone's Commentaries (Lewis's Ed.), Book 2, *196.

The third and last element in a complete legal title is the *right of property,* and this may exist without either possession or even the right of possession. When the *right of possession* is joined with the *right of property,* and to this double right actual *possession* is united, then, and then only, is the legal title complete.

The judgment entered in the instant case by the justice of the peace recites that the defendants "are guilty of unlawful possession of said premises, and that they be removed therefrom, and that the plaintiff be put in possession thereof." This determined the only issue involved: the fact of possession. It did not preclude the defendants from asserting their *right of possession* or their *right of property* therein. See Section 4216, Code, 1897; 11 Ruling Case Law 1179, Section 36.

Furthermore, the defendants could not truthfully plead that they claimed "by a title paramount to the lien by virtue of which the sale was made, or by title derived from the purchaser at the sale," as provided by Paragraph 3, Section 4208 of the Code, but they could elect to test "the right of property in any other manner," as provided by Section 4216.

The demand for *possession* by defendants on August 8, 1917, primarily involved their *right of possession,* and any damages proximately resulting by a refusal may be recovered. This demand afforded the plaintiff an opportunity to restore the fruits of his fraud, and, if refused, marks the initial point for a claim of damage, and the terminal point of protection by virtue of the judgment in the justice court.

The record before us clearly shows that the sheriff's certificate of sale was never intended to be assigned to the plaintiff, and that it was not intended that the plaintiff bank should ever become the legal title holder of the land. The shifting of the pleadings, the transfer of the cause from law to equity, and the admission made by the witness Wolf that "no claim is now made to the property beyond a claim of security," indicate the true relationship of the parties to this action. The sheriff's deed was prima-facie evidence of the bank's title, and the judgment of ouster was entered by reason of plaintiff's possession of said deed. The apparent right created thereby having been obtained wrongfully and by fraudulent means, the law will not deny the

rightful owner his right of redress for damages proximately resulting from such fraudulent act.

What was that damage? Under the instructions of the trial court, it was properly limited to "the fair and reasonable rental value of said premises from August 8, 1917, to the present time, and also the fair and reasonable value of the crops and vegetables of which the defendants were deprived, if any, on account of the plaintiff having possession of said premises after August 8, 1917."

Count V of defendants' counterclaim is predicated on fraud —a breach of fiduciary relations between principal and agent. Not only should the plaintiff's act be cognizable *in foro conscientiae*, but actionable in law. The actual and proximate damages alleged were proven on a theory correctly submitted in the court's instructions.

II. It is further contended by appellant that the conduct and statements of the defendant C. A. Iblings constitute an estoppel *in pais*. The record before us discloses that the defendant Iblings and his attorney were in the barnyard of the justice of the peace about 11 o'clock on the morning that the forcible entry and detainer case was called for trial. Iblings testified:

2. ESTOPPEL: who may not plead.

"Someone came out and asked me to come in. I did not go in. I cannot tell whether I was asked to come in the house before judgment was entered or after. I declined to come in as long as Mr. Wolf and his attorney were there."

Justice of Peace Eckles testified:

"I hollered to Mr. Iblings and said, 'Are you coming into the house,' or 'coming to attend the trial?' He said, 'Go ahead,' I believe, or something like that. I think that conversation was before the hearing and before the judgment was entered."

It will be observed that this conversation was had between the defendant Iblings and a third party. Plaintiff was not induced to proceed with the trial by reason thereof, nor did he act in reliance thereon in any manner to his prejudice. Only by inference can it be said that plaintiff learned or heard this statement of Ibling's, which gives rise to the alleged estoppel. Surely it did not deceive or mislead plaintiff, and therefore no

prejudice resulted upon which to rest the plea. *Dolph v. Wortman,* 185 Iowa 630.

An estoppel *in pais* is based upon an open act or a verbal representation or declaration upon which another person has acted, and arises only when the conduct of one party has been acted on by another to the prejudice of the other. *Dodd v. Groos,* 175 Iowa 47; *Larson v. Smith,* 174 Iowa 619. May the plaintiff herein by his own wrongful acts place himself in a prejudicial position, and then, by virtue of what the defendants did or did not do, fortify his position by a plea of estoppel? An affirmative answer to this proposition would be, in effect, a legal condonation of the plaintiff's fraudulent act in causing damage to the defendants. The law will not permit a person to ride to victory on the horse of another, fraudulently obtained. To constitute an estoppel, there must be a change of position, induced by the adverse party to the detriment of the pleader. If this were not true, a party could predicate an estoppel on another's conduct which he has induced by his own fraud. Under the circumstances of this case, appellant's position is untenable.

III. Prejudicial misconduct is alleged on the part of defendants' counsel in their argument to the jury.

3. TRIAL: misconduct in argument: belated objection. The argument of counsel for defendants on the trial below is found in the record, but we are not favored with the argument of counsel for plaintiff. The statements made in argument upon which error is based were not objected to at the time, and no exception was taken. True, they were made grounds for a new trial, but the trial court was justified in denying the motion on this ground. The objections came too late. *State v. Lounsbury,* 178 Iowa 555.

We find, however, that the statements complained of were made in response to and in explanation of arguments made by plaintiff's counsel, and that they related to evidence introduced by plaintiff. The record further discloses that, before any references were made in argument to the action of forcible entry and detainer by counsel for defendant, the plaintiff read to the jury all of the record relating to such action, and criticised defendants for their conduct in connection therewith. Furthermore, all of the defendants' counterclaims were offered in evidence by the plaintiff. These facts are not denied. We are not surprised

that, under the circumstances of this case, counsel for defendants used metaphor and hyperbole in argument, but we find no prejudicial error therein.

IV.　Are exemplary damages allowable, under the facts and the instructions of the trial court?

We deem it unnecessary to restate the facts of this case. The court instructed:

4. DAMAGES: exemplary damages: when nonallowable.　"You should allow no damages to defendants because of having been evicted from said premises on August 4, 1917, nor for anything which may have transpired between August 4, 1917, and August 8, 1917."

This instruction was a limitation as to the actual damages recoverable by the defendants. It was a recognition by the trial court that the justice of the peace in the ouster proceeding had jurisdiction of the subject-matter and of the parties to the action, and that a valid judgment was entered by the justice. It was also a recognition of the principle that a fraud committed by plaintiff, whereby he secured an apparent right to possession, is actionable. Actual damages were, therefore, recoverable, under the instruction, from and after August 8, 1917, when the demand for restitution was made. This being the law of the case, under the instruction given, the eelements on which exemplary damages could be predicaremoved from the consideration of the jury. Defen, however, may elect to take the actual damages awarded, and, if they so elect to accept same in the sum of $528.94, with interest thereon at 6 per cent from November 17, 1917, and file their declaration of acceptance with the clerk of the district court of Butler County, Iowa, within 30 days from the filing of this opinion with the clerk of the supreme court of Iowa, then the judgment in the sum of $528.94, with interest from November 17, 1917, and for costs and accruing costs is affirmed; otherwise, the judgment entered in this cause is reversed.—*Affirmed on condition.*

EVANS, C. J., WEAVER and PRESTON, JJ., concur.