Strafford,
No. 5512.

Mabel E. Wadsworth & a.

*v.*

Forrest H. Russell & a.

Argued November 1, 1966.
Decided February 8, 1967.

*Flynn, Powell & McGuirk* and *Raymond P. Blanchard* ( *Mr. Russell H. McGuirk* orally ), for the plaintiffs.

*Burns, Bryant, Hinchey & Nadeau* and *Robert P. Shea* (*Mr. Shea* orally), for defendant Forrest H. Russell.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* (*Mr. Gross* orally), for defendant Walter Ridings.

LAMPRON, J. The following findings could be made on the evidence. At about 1:00 P.M. on December 3, 1962, a clear day, the defendant Russell driving a jeep, with plaintiff Mabel as a passenger, was proceeding westerly toward Rochester on Route No. 202, a heavily traveled highway with a 50 mile an hour speed limit. Defendant Ridings was proceeding southerly on Salmon Falls Road, "a country road," with "a stop sign governing traffic traversing southerly on the Salmon Falls Road at its intersection with Route No. 202." These two vehicles collided in that intersection. A ram with a hook on the front of the Russell jeep caught in the vicinity of the left rear fender of the Ridings car swinging it around one and a half times. The jeep was tipped over on its side.

Ridings testified that as he approached the intersection he stopped at a stop sign on Salmon Falls Road located some distance north of the northerly edge of the pavement of Route No. 202 and again at that edge. At the latter point he looked to his left where he had an unobstructed view of 600 feet and saw no vehicle. He then looked to his right and observed nothing coming. Without looking again to his left he started across the intersection. He then heard a horn, looked to his left, saw the jeep about 24 feet away and then the crash occurred. There was evidence the Russell vehicle was traveling 25 to 30 miles per hour on Route No. 202.

We hold that the jury could properly find the defendant Ridings causally negligent in the operation of his automobile. He was under a duty to maintain an adequate lookout to discover the presence of motor vehicles on Route No. 202, such as the Russell jeep, to determine if he could safely enter the intersection. 7 Am. Jur. 2d., Automobiles and Highway Traffic, *s.* 355, *p.* 901; 3 Blashfield, Automobile Law and Practice (3d *ed.*) *s.* 114.13 (1965). See *Zellers* v. *Chase*, 105 N. H. 266, 268.

Defendant Russell traveling on Route No. 202 knew he was approaching a dangerous intersection at Salmon Falls Road. He testified he could bring his jeep to a stop in a distance of 25 feet after the brakes were applied which operation he could

4

perform automatically. It could be found that when he was about 70 feet away from the center line of Salmon Falls Road he could have seen northerly up that road a distance of 50 feet. He testified that if at that location he had seen a car coming out of Salmon Falls Road he could have stopped before reaching the point of impact. However he testified that he was almost at the entrance to Salmon Falls Road when the "first thing I see was the radiator of that Falcon [Ridings car] in front of me." This was the first time he saw the Ridings car.

Russell was under duty to maintain a proper lookout for other vehicles in the vicinity of or entering this intersection and to slow down or take any other action which reasonable care required. The jury could find him causally negligent.

Argument has been advanced by Russell that plaintiff Mabel should not recover against him because she "testified unequiv-ocally that before the accident happened she did not have any occasion to complain to Mr. Russell about his speed or the manner in which he operated the jeep, and, in fact, even at the time of the trial, she never complained about his manner of operation of the vehicle." *Harlow* v. *Leclair*, 82 N. H. 506. None of her testimony negated the warranted conclusion from all the evidence that Russell failed to keep a proper lookout. On the contrary she testified that he was maintaining his speed of 25 to 30 miles per hour without slowing when the Ridings vehicle appeared in front of them instantly before the collision. We fail to see how the doctrine of *Harlow* v. *Leclair, supra,* can bar her recovery on the facts of this case. *Griffin* v. *Theriault,* 107 N. H. 411.

The motions of each defendant for a nonsuit and a directed verdict in each action were properly denied.

Defendant Ridings claims that the Trial Court erred in instructing the jury that they could find him negligent for failing to stop at the stop sign. He maintains there was no evidence in the record on which the jury could have so found. *Bissonnette* v. *Cormier,* 100 N. H. 197. The record fails to show that this defendant brought the lack of evidence complained of to the attention of the Trial Court by a motion to withdraw the issue from consideration by the jury which is the procedure to be followed in such a case. *MacDonald* v. *Appleyard,* 94 N. H. 362, 363. He relies on an exception to the granting of the plaintiffs' request for the following instruction: " It was the duty of the defendant, Walter Ridings, to stop at the stop sign and to

yield the right of way to traffic on Route No. 202. If you find that he failed to stop or if you find he stopped but did not yield the right of way and that this caused or contributed to cause the accident, then your verdict should be for the plaintiffs." This instruction was not given as requested. We hold that this exception did not properly raise and bring to the attention of the Trial Court the issue of lack of evidence to submit to the jury the question of Ridings' failure to stop at the stop sign. *Gardner* v. *Company*, 79 N. H. 452, 457. *Terrell* v. *Payne*, 81 N. H. 164, 167. Assuming Ridings' contention is correct it is not properly before us for correction by the exception taken.

As previously stated Route No. 202 on which Russell was driving was a heavily traveled highway with a speed limit of 50 miles per hour. The Salmon Falls Road on which Ridings was proceeding was "a country road" and had a stop sign requiring traffic proceeding southerly, as he was, to stop before entering Route No. 202. Ridings excepted to the following instructions of the Court to the jury:

"You must bear in mind also that Route No. 202 is a favored highway and that the other highway is the inferior highway in relation to No. 202. So you will consider his [Ridings] conduct in relation to that situation . . . A person may not, of course, enter, as a reasonably prudent man, on a superior highway when there is danger of a collision by so entering."

There was no evidence of the existence of any ordinance or regulation which might override the usual right of way rule then governing travel at this intersection which was RSA 250:3. *Cf.* RSA 262-A:27-29. Consequently if Ridings was found to have complied with the requirement of the sign that he stop before entering Route No. 202, his conduct thereafter, as well as that of Russell, was subject to the requirements of RSA 250:3 with respect to the right of way at intersections. *Beaule* v. *Weeks*, 95 N. H. 453, 457. Consequently if these vehicles were arriving at the point of intersection at approximately the same instant Russell was to grant the right of way, at the point of intersection, to the vehicle approaching from his right, that is, Ridings, ( *Bissonnette* v. *Cormier*, 100 N. H. 197, 199 ) unless a man of reasonable prudence in Russell's position "would reasonably have concluded that he could pass the intersection without danger of collision." *Gendron* v. *Glidden*, 84 N. H. 162, 168.

If the Trial Court by its use of the words "favored highway"

and "inferior highway" intended to call the attention of the jury to the following factor it was proper for that purpose. The factor being that "while it is true that the right of way statute is general in its application, without regard to the comparative traffic upon or nature of the intersecting ways, it is well recognized by all who use our highways that drivers emerging from side roads onto heavily traveled main roads frequently consider it reasonable not to assert their statutory right of way and that those traveling the latter highways often proceed upon this assumption." *Isabelle* v. *Carnes*, 99 N. H. 184, 187.

However the charge is devoid of mention of any right which Ridings would have under the provisions of RSA 250:3 if he was found to have made the required stop. Furthermore the use by the Court of the word "favored" highway in relation to Route No. 202 and of the word "inferior" highway in relation to Salmon Falls Road could be interpreted by the jury as meaning that the usual rules governing intersecting ways were inapplicable. *Naramore* v. *Putnam*, 99 N. H. 175, 177. It was the duty of the Trial Court to fully and correctly instruct the jury as to the law applicable to the case and to so phrase his instructions that it was reasonably certain the jury understood them. *Davis* v. *State*, 94 N. H. 321, 323; *M A C Finance Co.* v. *Stone*, 106 N. H. 517, 518. In our opinion this was not done and there must be a new trial. If the realities of modern traffic conditions demand that travelers on heavily traveled high-speed ways should be given preference as to right of way at intersections, this should be accomplished by action of the Legislature.

Defendants contend that the Trial Court erred in refusing to set aside the verdicts of $40,000 in favor of Mabel on the grounds that there was no competent evidence of permanent injury, future pain, or future disability caused by the accident; that the verdicts were excessive; and that they were produced by passion, prejudice, misconduct or mistake on the part of the jury.

There was evidence to support the following findings by the jury. The Russell jeep in which Mabel was a passenger was tipped over on its side in the accident. As a result Mabel "was thrown into the windshield, back into the glass and then to the floor." She received injuries about the head, her glasses were broken and she was unconscious for a few seconds. Prior to this accident she had enjoyed very good health, slept well, and was a very active person participating in many sports. Besides being

employed for 11 of the 16 years of her married life she always performed all of her household work.

The day after the accident she started having terrific pains in her back and bad headaches. She was treated therefor by her family physician, a neurosurgeon, a chiropractor and one or two other doctors. Her nerves were affected as was her blood pressure and her sleep. At the time of the trial she was still treating with her family physician and was still suffering constant pain in the center of her back and bad headaches which necessitated taking aspirin about every day since the accident. She needed the help of her husband in the housework.

Dr. Maltby, a neurosurgeon, testified that X-rays taken while Mabel was under his care, starting April 30, 1964, showed she had localized arthritis in the 7th, 8th and 9th dorsal vertebrae which was "secondary to trauma sometime in the past." He also testified that "the pain that she describes from a medical point of view is consistent with the x-ray area of trouble." When asked in a hypothetical question based on her history "whether there is a causal relationship between the accident . . . and your findings," he answered "I believe there is a relationship." He also testified "I doubt if there will be much improvement in this condition over the years" and it is "very probable that localized traumatic changes such as shown in her x-rays will get worse with aging." Her family physician testified that Mabel will not be able to be gainfully employed in the future "at least in the type of work she has performed previously." Dr. Maltby testified that the pain which she said prevented her from working was consistent with his findings.

We hold that this evidence warranted findings by the jury that as a result of this accident Mabel has sustained permanent injury which will cause her future pain and disability which will prevent her from being gainfully employed. *Gilliam* v. *Waltsons Corporation*, 105 N. H. 373, 378.

The record also supports the following findings. Mabel had been employed for 11 years before the accident with very little time off for sickness and she intended to work for her "lifetime." She was 41 years of age at the time of the trial with a life expectancy of 32 years. Her wages had been $35 — 40 per week, $50 per week and as high as $89 per week when on piecework. She had earned $2,900 from her work in the year 1960.

Given her permanent injury, her probable lifetime of pain and

suffering and disability and loss of wages caused by this accident, we cannot say as a matter of law that Mabel's verdicts were excessive and that the Trial Court erred in refusing to set them aside on that ground. *Gilliam* v. *Waltsons Corporation*, 105 N. H. 373, 378; *Haney* v. *Burgin*, 106 N. H. 213, 218.

The jury returned verdicts for Mabel's husband, Harold, in the amount of $5,500. The Trial Court ordered these verdicts set aside unless the plaintiff filed a remittitur of sums in excess of $500. There was evidence from which the amount of medical expenses to which he was entitled could be readily computed and the excess amount of the verdicts separated therefrom and ordered remitted. We cannot say that the Trial Court acted improperly in not setting aside these verdicts if the plaintiff remitted the excess amount, which he did. *Cram* v. *Hadley*, 48 N. H. 191, 195. See 5 Am. Jur. 2d, Appeal and Error, *s.* 940, *p.* 367. Nor can we hold that the Trial Court erred in refusing to set aside the verdicts for Mabel on the ground that the excessiveness of the verdicts for Harold required a finding that the jury must have been influenced by partiality or prejudice or have been misled in the verdicts rendered in her actions. *Hanlon* v. *Pomeroy*, 102 N. H. 407, 409.

The error in the Court's charge hereinbefore discussed dealt solely with the issue of liability of the defendants and did not affect the amount of damages to be recovered by the plaintiffs. Furthermore it clearly appears that the issues of liability are separable from those pertaining to damages and also that a retrial of the latter is not necessary to afford a fair retrial of the former. The new trial therefore will be limited to the question of liability. *Kilfoyle* v. *Malatesta*, 101 N. H. 473, 475; *Lampesis* v. *Comolli*, 101 N. H. 491; *Moulton* v. *Langley*, 81 N. H. 138, 139.

However the error in the charge on the issue of liability which was prejudicial to defendant Ridings ( RSA 250:3 ) did not prejudice the rights of defendant Russell as it could only react to his benefit. The liability of Ridings can be determined independ-ently of that of Russell and vice versa without prejudice to either of them or to the plaintiffs who have asked to have the liability of Ridings alone retried. *Beaule* v. *Weeks*, 95 N. H. 453, 459; *Chmielewski* v. *Marich*, 2 Ill. 2d 568, 576. As justice does not require a retrial of the actions against Russell or of the issue of damages in the actions against Ridings, the new trial will be

limited to the issue of liability only in the actions against Ridings.

*Defendant Russell's exceptions overruled.*
*New trial on issue of liability of*
*defendant Ridings.*

BLANDIN, J., sat at argument but took no part in the decision; the others concurred.