**TEAM CENTRAL, INC., Appellant,**

v.

**TEAMCO, INC., Appellee.**

**TEAMCO, INC., Third-Party Plaintiff, Appellee,**

v.

**DAYTON HUDSON CORP., Third-Party Defendant, Appellant.**

**No. 60102.**

Supreme Court of Iowa.

Nov. 22, 1978.

Rehearing Denied Jan. 19, 1979.

Thoma, Schoenthal, Davis, Hockenberg & Wine, Des Moines, and Duane W. Krohnke, Minneapolis, Minn., for appellants.

Nyemaster, Good, McLaughlin, Emery & O'Brien, Des Moines, Kersten, Opheim, Carlson & Estes, and David A. Sergeant, Fort Dodge, for appellee.

LeGRAND, Justice.

This matter started out as a simple suit on an open account for merchandise furnished and services rendered by a franchisor (Team Central, Inc.) to its franchisee (Teamco, Inc.). It later blossomed into complicated litigation involving a number of difficult questions arising out of Teamco's counterclaim against Team Central and Dayton Hudson Corporation. On trial to a jury, Team Central's claim on the account was denied, and Teamco was awarded judg-

ments totalling $2,550,000.00 on its counterclaim. Team Central and Dayton Hudson both appealed. We modify the judgments to eliminate duplicate damages and to provide that payment of $1,500,000.00, exclusive of interest and costs, shall satisfy all judgments against Team Central and Dayton Hudson. As thus modified, the judgments are affirmed.

Team Central is engaged in the sale and distribution of electronic components and equipment, principally through designated franchisees. Teamco operated two stores in Des Moines as a Team Central franchisee. Teamco and Team Central became increasingly involved in differences over the operation of the business. Eventually these differences led to the courthouse, first on Team Central's open-account claim and later on Teamco's counterclaim for tortious interference with business, breach of contract, wrongful attachment, trespass, and conversion. By amendment, Teamco brought Dayton Hudson Corp. into the case as an additional defendant on the counterclaim.

Team Central is wholly owned by Dayton Hudson. Teamco alleged Team Central is a mere conduit for Dayton Hudson, that Team Central's corporate veil should be pierced and that Dayton Hudson should be held liable for Team Central's tortious conduct.

Teamco's specific allegations against Dayton Hudson include the following:

"[S]ince the purchase of all of the corporate stock of Team Central, Inc., by Dayton Hudson Corporation, the stockholders and directors meetings of Team Central have been loosely and informally conducted, Dayton Hudson Corporation and Team Central, Inc., have commingled their monies and the said Dayton Hudson Corporation has been such a dominant force in the business and activities of said Team Central that it is merely a sham or conduit for Dayton Hudson Corporation.

"That the officers and directors of Dayton Hudson Corporation directed, knew of and acquiesced in the wrongful activities set forth."

By an affirmative answer to a special interrogatory, which we discuss in detail later, the jury found Team Central was the *alter ego* of Dayton Hudson and that the latter was liable for any judgment rendered in this case against the former.

The jury returned the following verdicts against both corporations:

*Wrongful attachment*

| | |
|---|---|
| Compensatory damages | $100,000.00 |
| Punitive damages: | |
| against Team Central | $150,000.00 |
| against Dayton Hudson | $150,000.00 |
| Total | $400,000.00 |

*Tortious interference with business*

| | |
|---|---|
| Compensatory damages | $500,000.00 |
| Punitive damages: | |
| against Team Central | $500,000.00 |
| against Dayton Hudson | $1,000,000.00 |
| Total | $2,000,000.00 |

*Conversion*

| | |
|---|---|
| Compensatory damages | $25,000.00 |
| Punitive damages: | |
| against Team Central | $25,000.00 |
| against Dayton Hudson | $25,000.00 |
| Total | $75,000.00 |

*Trespass*

| | |
|---|---|
| Compensatory damages | $25,000.00 |
| Punitive damages: | |
| against Team Central | $25,000.00 |
| against Dayton Hudson | $25,000.00 |
| Total | $75,000.00 |

The jury returned an additional verdict for compensatory damages in the amount of $500,000.00 for breach of contract, which the trial court disallowed as duplicative of the award for tortious interference with business. This was accomplished by a provision in the judgment entry, making satisfaction of the judgment for tortious interference with business a discharge of the

award for breach of contract as well. Teamco consented to this reduction, and that matter is not an issue on this appeal. In other words the jury verdicts totalled $3,050,000.00; the judgment as entered reduced them to $2,550,000.00.

I. Teamco complains of difficulty in answering Team Central's brief because the assigned issues are presented "in general and blanket form, are improperly, inconsistently and equivocally phrased, vary from main issue to sub-issues, lack reference to parts of the record showing how the issues arose and any ruling thereon, omit some grounds which were urged in argument and include some grounds which are not argued."

■ Without belaboring the point, we find some merit in this complaint. Issues should be stated as briefly and clearly as possible. Team Central's brief does neither. In many instances we have been left to sort out for ourselves the real errors relied on. Having done so, we now state the issues as we believe them to be:

  I.  Claim that Team Central's motion for directed verdict on its claim against Teamco for $162,669.80 should have been granted.

  II.  Claim that the judgments for Teamco lack evidentiary support, are the result of passion and prejudice, and should be set aside as excessive.

  III.  Claim that there is no substantial evidence to permit the jury to consider whether Team Central's corporate veil should be pierced; and that such matter in any event was for the court to determine as a matter of law.

  IV.  Claim that the jury verdicts are duplicative and allow double recovery.

  V.  Claim that the trial court erred in admitting the expert testimony of Sidney Smith; documentary evidence concerning Team Central's Denver, Colorado, franchise; and evidence of a telephone conference over the objection it was privileged.

  VI.  Claim that the trial court erred in denying Team Central's motion for new trial because of prejudicial final argument.

  VII.  Claim that the trial court erred in requiring Team Central to produce certain records for use by Teamco during trial.

  VIII.  Claim that the trial court erred in denying fees for the receiver's attorney and that the amount of attorney fees allowed Teamco's counsel under § 639.14, The Code, is excessive.

There are other matters raised by Team Central and Dayton Hudson which we have considered, but the above are the only ones which deserve discussion. For convenience we refer sometimes to Team Central, sometimes to Dayton Hudson, and sometimes to both. Regardless of the designation used, what we say applies to both corporations except when otherwise noted.

### II.  *Team Central's claim on open account.*

As already pointed out, Team Central triggered the events leading up to this appeal by suing Teamco for $162,489.88 on an open account. The jury denied the claim in its entirety. Team Central argues it was entitled to a directed verdict on this issue. The trial court disagreed, and so do we. It is seldom that one who has the burden of proof establishes his case as a matter of law. *Ritchey v. Iowa Employment Security Commission*, 216 N.W.2d 580, 585 (Iowa 1974); *Hepp v. Zinnel*, 199 N.W.2d 68, 69 (Iowa 1972). In considering such motions, the evidence is viewed most favorably to the one against whom the motion is made. Rule 14(f)(2), Rules of Appellate Procedure.

The open account covered a period from March 10, 1971, to November 5, 1973, and contained literally hundreds of items. It included charges for merchandise, services, remodeling costs, and fixtures. Although several motions for more specific statements were filed, there was never a definitive bill of particulars filed. The trial court

held Teamco must bear some responsibility for this because it did not insist on strict compliance with early trial court orders. Be that as it may, the state of the pleadings was such that Teamco cannot be held to have admitted the amount claimed to be due under rule 99, Rules of Civil Procedure, as Team Central now says it should.

There was a mass of documentary evidence in addition to the testimony of numerous witnesses. The trial court correctly instructed that Team Central had the burden of proving the account, including that the prices charged were fair and reasonable. Team Central's own witnesses were not entirely consistent concerning dates, items, amounts, and value. There was also some dispute concerning the accuracy of some of its bookkeeping procedures.

Team Central insists an admission by Robert Pecka, Teamco's president and sole stockholder, that Teamco owed "probably around $150,000.00" on the account entitled it to a directed verdict. This statement was made in prior testimony and was introduced at trial as part of Team Central's case.

At trial, however, Pecka explained this by saying he did not have all the facts and did not really know the status of the account at the time of the deposition. Certainly this answer was suspect, but it was for the jury to decide its credibility. Apparently the jury believed Pecka's trial testimony. They had a right to do so.

■ It is not enough for Team Central to show *something* is due on the account. It must prove how much Teamco owes. If it fails to sustain that burden, it has failed to establish the claim. The jury cannot hit upon any compromise figure, as it may when considering unliquidated claims. Under this record we cannot say as a matter of law that Team Central established the amount due from Teamco. We, therefore, affirm the trial court's denial of Team Central's motion for a directed verdict.

### III. *Evidentiary Questions.*

We discuss next the evidentiary questions and in each instance hold the trial court's rulings do not amount to reversible error.

■ The first deals with Sidney B. Smith, who testified as an expert concerning the value of Teamco's business.

Team Central objected to Smith's value testimony on the ground that it was based on a "fictional" performance by Teamco, that it failed to take into account the actual performance of the company—particularly its loss record—and that his opinion was therefore "misleading to the jury."

Other factors which Team Central insists were overlooked or ignored by Smith include the company's book value and a recent transaction involving the transfer of stock ownership. However, Smith *did* consider these matters, to which he attached little significance.

Mr. Smith is both a lawyer and a certified public accountant. He also has a degree in economics. He was employed by the accounting firm of Arthur Anderson Company from 1942 to 1947 (with three years out for military service). In 1947 he became a partner in a Des Moines accounting firm, where he remained until 1953. At that time, he formed his own accounting firm, which still operates in Des Moines under the name of Sidney B. Smith & Company. Mr. Smith testified he was frequently called upon to value a going business and he outlined two of the most common methods of doing so. He described them in this way:

"* * * You are generally looking at profits and are anticipating profits, and you are usually willing to pay a multiple of earnings. In other words, you are willing to pay five times, eight times in annual earnings to acquire that business, expecting to repay your money, in other words, in five to eight years. That is one method and probably the most frequently used.

"You are not buying mortar and bricks, you are really buying potential profits. So normally you are using a range of five to eight time earnings for that purpose.

"Another way of looking at it, and usually you do the other as well, is that if

you are going to invest money in a business and are going to have to get that money back out of future profits, you project those profits over the future years and you say, in a sense, 'What am I willing to pay today to receive those profits in the future?' In other words, you discount them from discount tables, and once you have a base of profits to use, you go to tables that are accepted tables, the same kind of thing a banker would use for computing interest, and discount those future profits to a present day value. You use one or the other methods, or both, usually."

Team Central's own expert, Larry Mosebach, acknowledged the methods used by Smith were generally accepted practices among accountants.

One of Team Central's principal objections to Smith's testimony is that he put a substantial value on the business without considering the losses Teamco had sustained for the past several years, but this is not borne out by the record. Smith testified he did take them into account but gave them little weight because of the manner in which they were incurred. In other words, he assumed the truth of Teamco's allegations that Team Central had systematically and maliciously caused these losses. Even Mr. Mosebach testified business losses might not seriously affect the value if there was "a dramatic explanation" for them. This might weaken Smith's opinion, but it would not render it inadmissible.

This is not a case where the jury was not informed of the basis for the expert's conclusions. *See Hedges v. Conder*, 166 N.W.2d 844, 857–58 (Iowa 1969); *Dougherty v. Boyken*, 261 Iowa 602, 614, 155 N.W.2d 488, 495 (1968). Smith detailed exactly how he operated; he gave reasons for each procedure; he was subjected to arduous cross-examination; he was contradicted in some instances by Team Central's expert, confirmed in others. Team Central's objections go to the weight of this testimony, not its admissibility. The trial court did not err in permitting this evidence under its broad discretionary power. *Haumersen v. Ford*

*Motor Co.*, 257 N.W.2d 7, 11 (Iowa 1977) and citations.

■ Team Central also complains because the trial court admitted evidence concerning the manner in which it had terminated the franchise of its Denver, Colorado, dealer. The theory for this evidence was that it showed Team Central's state of mind in cancelling Teamco's franchise under strikingly similar circumstances. It was admitted for that limited purpose. This is a question of trial court discretion. *See Davis v. L & W Construction Co.*, 176 N.W.2d 223, 227 (Iowa 1970).

We discussed a similar problem in *Northrup v. Miles Homes Inc. of Iowa*, 204 N.W.2d 850, 855–56 (Iowa 1973). In stating we reverse only for an abuse of discretion, we said:

"Civil trial admissibility of similar acts is basically a question of practicality involving the inconvenience of trying collateral issues. See 32 C.J.S. Evidence § 578, p. 703. The determination of the relevancy and similarity of other acts is for the trial court within its exercise of sound judicial discretion. See *Davis v. L & W Construction Company*, 176 N.W.2d 223 (Iowa 1970)."

There must, of course, be substantial similarity of circumstances before this rule may be invoked. While there may be differences of opinion on this question under the present facts, we cannot say the trial court's ruling was an abuse of discretion. There is no reversible error here.

■ Another evidentiary matter concerns the ruling which required Team Central to produce for Teamco's use a written memorandum of a conversation between Team Central and one of its attorneys. It is claimed this was a privileged document protected by the attorney-client relationship.

The question originally arose with regard to a number of documents. The trial court ruled several were protected by the privilege, but that the one in question was not. The trial court found these notes concerned a conversation limited to matters of business policy, and that legal advice was nei-

ther sought nor given. *See U. S. v. Calvert,* 523 F.2d 895, 908–10 (8th Cir. 1975), *cert. denied* 424 U.S. 911, 96 S.Ct. 1106, 47 L.Ed.2d 314; *Radiant Burners, Inc. v. American Gas Ass'n,* 320 F.2d 314, 324 (7th Cir. 1963), *cert. denied* 375 U.S. 929, 84 S.Ct. 330, 11 L.Ed.2d 262; *Duplan Corp. v. Deering Milliken, Inc.,* 397 F.Supp. 1146, 1161 (D.C.S.C.1975). *Contra see Harper & Row Publishers, Inc. v. Decker,* 423 F.2d 487, 491 (7th Cir. 1970), *aff'd.* without opinion by equally divided court 400 U.S. 348, 91 S.Ct. 479, 27 L.Ed.2d 479 (1971).

■ We believe this ruling, too, was a proper exercise of trial court discretion. In any event the matter objected to is not of sufficient importance to justify a reversal. *See Baysinger v. Haney,* 261 Iowa 577, 583, 155 N.W.2d 496, 499 (1968).

■ During the trial, the court ordered Team Central to make available to Teamco's counsel certain tapes of telephone conversations involving a former vice president of the company, who had made the tapes and who had made them available to Team Central for use at the trial. Team Central's only objection was that the tapes were "the property of a non-party witness who had not been subpoenaed or had not testified nor had any demand made upon him for the documents." Team Central cites no authority to support its position.

The trial court held the delivery of the tapes to Team Central for use at trial was sufficient to permit their inspection and use by Teamco. We find no abuse of discretion in this ruling.

IV. *Tortious interference with Teamco's business.*

■ Perhaps the most serious claim made by Teamco is the one for tortious interference with its business. We have recognized this as an actionable tort in several cases. *See Farmers Cooperative Elevator, Inc. v. State Bank,* 236 N.W.2d 674, 679 (Iowa 1975); *Clark v. Figge,* 181 N.W.2d 211, 213–14 (Iowa 1970), *cf. Frohwein v. Haesemeyer,* 264 N.W.2d 792, 795 (Iowa 1978).

Teamco alleged that Team Central maliciously and deliberately engaged in a course of conduct designed to destroy its business. Team Central argues that there is no evidence in the record to support submission of this charge to the jury.

Teamco set out twenty-three separate wrongful acts. We summarize them as follows. It alleges that Team Central falsely and maliciously represented that it would buy Teamco's assets and take over the operation of the Des Moines stores as company outlets; that it represented over an extended period that money for such purchase was or soon would be available and that delay in completing the deal was routine when in fact Team Central knew financing for the deal had already been refused by Dayton Hudson; that Team Central induced Gary Ferguson to abandon his plans to buy Teamco by threat of economic reprisal and by falsely representing to him Team Central intended to buy out Teamco; that it sought to hire Teamco's manager away for the purpose of harming Teamco's operation; that it told Teamco not to pay anything on its account while at the same time encouraging it to increase its inventory, all as part of a scheme to put Teamco in a precarious financial position; that it wrongfully canceled Teamco's franchise without cause; that Team Central wrongfully attached Teamco's property; and that it converted Teamco's assets to its own use.

There was ample evidence to support these allegations, particularly those dealing with Team Central's deceptive representations concerning the proposed purchase of Teamco's business long after there was no possibility the deal would be consummated. Not only did Team Central mislead Teamco as to its own intentions, it also intervened to prevent a sale by Teamco to Mr. Ferguson. It would serve no purpose to detail the evidence at length. We do not say, of course, that the jury *had* to reach the conclusions it did. We say only that the evidence, viewed in the light most favorable to Teamco, permitted it to do so.

There is no merit to Team Central's claim there was no jury question generated on this issue.

## V. Piercing Dayton Hudson's corporate veil.

Team Central also challenges the jury's finding that it was a mere sham or conduit through which Dayton Hudson operated. We believe there is strong evidence to support the jury's affirmative answer to a special interrogatory which submitted this question for determination.

Specifically the jury found Team Central "is an instrumentality of, or conduit for, and one and the same as Dayton Hudson Corporation" and that Dayton Hudson is "therefore liable for any recovery herein found against Team Central, Inc."

■ We agree with Team Central that mere identity of stock ownership and corporate management is not alone sufficient to permit a piercing of the corporate veil. *Majestic Company v. Orpheum Circuit, Inc.*, 21 F.2d 720, 724–25 (8th Cir. 1927); *Randolph Foods, Inc. v. McLaughlin*, 253 Iowa 1258, 1269–70, 115 N.W.2d 868, 874 (1962); *Des Moines & Central Iowa Railway Company v. Iowa State Tax Commission*, 253 Iowa 994, 1001, 115 N.W.2d 178, 182 (1962).

■ However, there is much more here. The trial court detailed twelve circumstances to be considered along with "all other evidence in the case" in determining if the corporate veil should be pierced. The main thrust of Team Central's argument is that fraud is an essential element for application of this doctrine. Team Central argues the trial court erred in listing it as a factor but not a necessary one. It is doubtful if this error has been preserved, but in any event we find it is without merit.

It is true that the corporate veil doctrine is most frequently applied to avoid fraud. However, it is equally appropriate under other circumstances when one corporation is used as a mere sham for the other. *Darling Stores Corp. v. Young Realty Co.*, 121 F.2d 112, 115–16 (8th Cir. 1941); *Briggs Transportation Co., Inc. v. Starr Sales Co., Inc.*, 262 N.W.2d 805, 809–11 (Iowa 1978); *Inn Operations, Inc. v. River Hills Motor Inn Co.*, 261 Iowa 72, 84–85, 152 N.W.2d 808, 815–16 (Iowa 1967); *Wescott & Winks Hatcheries v. F. M. Stamper Company*, 249 Iowa 30, 35–37, 85 N.W.2d 603, 607 (1957); *Wade & Wade v. Central Broadcasting Co.*, 227 Iowa 427, 429, 288 N.W. 441, 443 (1939).

*See* discussion in *Fletcher Cyclopedia of the Law of Private Corporations*, § 41.3 (1974 revised edition). *See also Johannsen v. Mid-Continent Petroleum Co.*, 232 Iowa 805, 819–20, 5 N.W.2d 20, 25–28 (1942); Annot. 7 A.L.R.3d 1343 (1966) and Annot. 38 A.L.R.3d 1102 (1971).

■ This was properly submitted to the jury. There was substantial evidence that Team Central was a mere sham for Dayton Hudson without real independent existence and that this arrangement was used to do severe, if not irreparable, harm to Teamco by the tortious conduct previously described.

■ We mention briefly Team Central's additional argument that whether or not the corporate veil should be pierced is a question of law to be decided by the court, not the jury. We do not believe that this is a correct statement and several of our cases hold otherwise. *Johannsen v. Mid-Continent Petroleum Co.*, 232 Iowa at 819, 5 N.W.2d at 27–28; *Wade & Wade v. Central Broadcasting Co.*, 227 Iowa at 429, 288 N.W. at 443.

## VI. Damages.

■ We come next to Team Central's most serious complaint. It concerns the assertion that the jury awarded duplicate damages and that the verdicts for trespass, conversion, and wrongful attachment, both as to actual and punitive damages, cannot stand.

Consideration of this issue requires a detailed statement of the manner in which it comes to us. As briefly stated in Division I, Teamco filed its counterclaim in five counts. They listed separate actions for tortious interference with business, breach of contract, wrongful attachment, trespass, and conversion. The jury returned verdicts in Teamco's favor on each claim. The damages, both compensatory and punitive, totalled $3,050,000.00. In entering judgment

on these verdicts, the trial court held the verdict on breach of contract in the amount of $500,000.00 was duplicative of the jury verdict for tortious interference with business. The judgment entry provided that payment of the tortious interference claim would satisfy also the one for breach of contract. We believe this was proper but do not believe the court went far enough. Similar treatment should have been accorded the awards for trespass, conversion, and wrongful attachment.

As already mentioned, Teamco alleged twenty-three different acts by Team Central designed to destroy its business. We set out three of them in full:

"In order to aid in accomplishing its unlawful and malicious motives and objectives and to force Teamco in a position where it would have to give its assets and valuable business relations to Team, and to prevent the completion of the purchase by Ferguson, on November 8, 1973, Team sent its officers and agents to Des Moines to trespass upon Teamco's property and to physically take over Teamco's premises and business, without any notice to or consent of Teamco or Pecka for such actions.

"On said date, Team's agents took possession of Teamco's stores, fired Teamco employees or caused them to quit, drove customers away, changed the locks on the doors of Teamco's stores, unlawfully and intentionally converted money from Teamco's stores in the amount of $631.72, intentionally converted Teamco's books and records and took the same to Minneapolis, Minnesota, and opened a checking account in its own name in a bank in Des Moines in which to deposit proceeds from sales, of Teamco's merchandise inventory, and fraudulently converted other and further funds, the extent of which is unknown.

"As a further part of said unlawful and malicious scheme Team filed this lawsuit against Teamco, which lawsuit included an application for Writ of Attachment attaching the property of Teamco, including all of its inventory of electronic goods, immediately prior to the Christmas selling season, when no grounds for such attachment existed and Team had no reasonable grounds to believe that such grounds existed and obtained an injunction against Teamco enjoining it and all other persons from removing any property from the premises of its two stores in Des Moines."

From the above, it is clear Teamco considered the acts of trespass and conversion and the wrongful attachment as an integral part of the tortious interference with its business. The case was both pled and tried on that theory.

We believe the jury verdict in the amount of $500,000.00 for tortious interference with Teamco's business of necessity included any damage resulting from the specific acts of wrongful attachment, from trespass, and from conversion. Perhaps this would not be the inevitable result in all cases, but as this case was pled, tried, and submitted, it was the result here.

■ Teamco argues strenuously that Team Central waived any error on the question of duplicate damages by failing to object to the damage instructions or to the form of jury verdicts. While such a procedure might have avoided some of the later problems, it is just as likely an explanatory instruction would have confused rather than clarified. Any record made at the time would have been wholly anticipatory.

The case was submitted on special verdict forms. The jury could have returned a verdict for Team Central on the tortious interference issue and against it on the others. In that event the present problem would not have arisen. In other words there was no duplication until the verdicts were in and until it became necessary to enter judgment on each special verdict returned.

The trial court was well able to guard against duplicate damages at that time and, in fact, undertook to do so by setting aside

the judgment for breach of contract as duplicative of the award for tortious business interference. As already mentioned, this procedure was proper. It simply didn't go far enough.

■ Either the trial court or the appellate court has jurisdiction to enter appropriate judgment when the form of verdict separates the allowable damages from those items for which recovery should not be had. One of our early cases lends support to this view. *Gower & Holt v. Carter & Shattuck*, 3 Iowa (Clarke) 244, 257 (1856). *See also* 5 Am.Jur.2d, *Appeal and Error*, § 641 and § 940 (1962); 5B C.J.S. *Appeal and Error* § 1883c(2) (1958); *Balch v. Newberry*, 208 Okl. 46, 253 P.2d 153, 157 (1953); *Wadsworth v. Russell*, 108 N.H. 1, 226 A.2d 492, 497 (1967).

We believe rule 205, Rules of Civil Procedure, which sets out the procedure for entering "appropriate" judgments on special verdicts, contemplates such a procedure, too.

Team Central did not waive its right to raise here the question of duplicate damages.

■ The purpose of damages is to restore an injured party to the position he enjoyed before his injury. Duplicate or overlapping damages are to be avoided. *Hysell v. Iowa Public Service Company*, 559 F.2d 468, 473 (8th Cir. 1977); *Dealers Hobby, Inc. v. Abild Construction Company, Inc.*, 255 N.W.2d 131, 134 (Iowa 1977) and citations; *DeWall v. Prentice*, 224 N.W.2d 428, 434 (Iowa 1974) and citations; *Schnebly v. Baker*, 217 N.W.2d 708, 726 (Iowa 1974).

We are convinced Teamco would receive duplicate or double damages if permitted to enforce the separate judgments for wrongful attachment, trespass, and conversion. After awarding damages for tortious interference with business on grounds which included wrongful attachment, trespass, and conversion, the jury returned separate verdicts for each of these acts. The inescapable fact is that this amounted to compensating Teamco twice for each of these wrongs.

There is still another facet of the duplicate damage problem which we must face. It concerns the award of punitive damages on the tortious interference with business division against Team Central in the amount of $500,000.00 and against Dayton Hudson in the amount of $1,000,000.00. Team Central argues there should not be separate punitive damage awards, and we agree.

■ There is no doubt that when there are two defendants, there may be separate—and different—punitive damage awards. This is true because the purpose of such damages is to punish the wrongdoer rather than to compensate the victim. The amount necessary to punish one may be entirely inadequate to "hurt" the other. *See Hall v. Montgomery Ward & Company*, 252 N.W.2d 421, 424 (Iowa 1977).

■ However, that rule should not apply here. The verdicts against Dayton Hudson were returned solely on the theory the corporate veil should be pierced. This is apparent from the twenty-five forms of verdict submitted with the case. Although Teamco had pled the separate wrongful conduct of Dayton Hudson, there was no form of verdict upon which such a finding could have been made. From this as well as from the jury's answer to the special interrogatory directed to that issue, the conclusion is inescapable that Dayton Hudson's liability was on the premise so vigorously argued by Teamco—the separate corporate identities should be disregarded.

Under such circumstances, there should be only one punitive damage award. We recognize the corporate veil doctrine is simply an expedient for allowing one to reach the party who should really answer for a wrong. For all other purposes the two corporations remain separate; but Teamco should not have it both ways. Since it has

been established that Team Central and Dayton Hudson are one and the same for the purpose of holding Dayton Hudson liable, that finding should hold for fixing damages as well.

Nor is it any answer to say that the two separate awards for punitive damages ($500,000.00 against Team Central and $1,000,000.00 against Dayton Hudson) should then be lumped together into one award to reach the same result. This has superficial appeal, but we do not believe it is a proper solution. We cannot speculate concerning what the jury would have done had it made only a single award of punitive damages.

■ We have not overlooked the fact that our law does not permit a remittitur of punitive damages. *Northrup v. Miles Homes Inc. of Iowa*, 204 N.W.2d at 861. However, we may set a punitive damage verdict aside entirely under proper circumstances. That is what we have done here to avoid double recovery.

The only judgment which Teamco is entitled to collect is the one on its claim for tortious business interference in the amount of $1,500,000.00. This consists of $500,000.00 in actual damages and $1,000,000.00 in punitive damages. Payment of those amounts shall constitute full satisfaction of all judgments against both Team Central and Dayton Hudson except the one for attorney fees, which we discuss later.

VII.  *Attorney fees allowed under § 639.14, The Code.*

■ The jury found Team Central had wrongfully attached Teamco's property. The fact that Teamco is not allowed to enforce that judgment does not affect the validity of the jury's finding nor the right to an allowance of attorney fees under § 639.14, The Code.

■ Team Central does not object to an allowance of fees, only to the amount. After a hearing at which verified time records were submitted by counsel, the trial court awarded Teamco's lawyers $46,000.00. The trial court explained its ruling and the basis for it. This is a matter upon which the trial court, in the exercise of sound judicial discretion, is much better able to pass than are we. We reverse only for an abuse of discretion. We find none here.

■ We also decline to disturb the trial court ruling that counsel for the receiver, who was appointed in connection with the attachment action, should not be compensated from the receivership property. *See Frick v. Fritz*, 124 Iowa 529, 532–33, 100 N.W. 513, 514 (1904).

VIII.  *Miscellaneous Matters.*

■ Team Central says we should reverse the case because of prejudicial misconduct by Teamco's counsel in final argument. The arguments were not reported. No objection was made when the alleged misconduct occurred. Ordinarily this waives any impropriety in remarks of counsel. *See Hoegh v. See*, 215 Iowa 733, 737, 246 N.W. 787, 788 (1933); *State Exchange Bank v. Iblings*, 190 Iowa 1045, 1052, 181 N.W. 423, 426 (1921). The reason for this rule is that *failure to object deprives the trial court of the opportunity to avoid reversible error by timely admonition. Turner v. Jones*, 215 N.W.2d 289, 291 (Iowa 1974). We find no merit in this complaint.

The claim of irregularity in the jury's verdict on the wrongful attachment issue is rendered moot by our conclusion that judgment may not be enforced in any event.

We find no merit to the argument the trial court was wrong in directing a verdict for Robert Pecka, who was made a defendant by amendment to Team Central's petition on the open account.

We have considered all issues raised on this appeal whether separately discussed or not. We find nothing which entitles Team Central or Dayton Hudson to any relief except that which we have already granted.

IX.  *Conclusion.*

We summarize our findings as follows:

(1). The judgment for $500,000.00 actual damages and $1,000,000.00 punitive damages on Teamco's claim for tortious interference with business is affirmed. The separate punitive damage judgment for $500,000.00 is set aside.

(2). Satisfaction of the judgment in (1) shall constitute full and complete satisfaction of all judgments against both Team Central and Dayton Hudson except as noted in (3).

(3). The judgment for attorney fees awarded under § 639.14, The Code, $46,000.00 is affirmed.

MODIFIED and AFFIRMED.

All Justices concur except ALLBEE, McGIVERIN and LARSON, JJ., who take no part.