Seasons v. Country Gas          CV-96-010-B    09/30/97

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW HAMPSHIRE

<u>The Seasons at Attitash</u>
<u>Owners Association</u>

    v.            C-96-010-B

<u>Country Gas, Inc.</u>


### <u>MEMORANDUM AND ORDER</u>

The Seasons at Attitash Owners Association (the "Association") is the governing body for the Seasons at Attitash Condominium development (the "Seasons"), located in Bartlett, New Hampshire. Country Gas, Inc. ("Country Gas") is a Maine corporation that provided liquid propane ("LP") gas to the Seasons from December 1986 through February 1996.

The Association brought this class action against Country Gas asserting three claims: (1) a breach of the contract to supply LP gas; (2) a violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. § 358-A (1995), arising out of the same contract; and (3) a petition to quiet title in the LP gas system installed at the Seasons and the easements needed to access the system. Country Gas's answer contained a counterclaim seeking to quiet title to the LP gas system and easements in itself. Country Gas now moves for summary judgment on its petition to quiet title and requests costs and attorney's fees.[1]

---

[1] Country Gas also moved for summary judgment on some of the Association's contract and consumer protection claims. These issues have already been addressed in a separate order.

## I.  FACTS

### A.  The Declarations of Condominium.

On August 15, 1985, the developer of the Seasons, Mountain High Development Corporation ("MHDC"), executed two declarations of condominium pertaining to the two phases in which MHDC planned to develop the Seasons.  The declaration concerning the first phase ("Phase I") described the construction of a single eight-unit building.  The declaration indicated that the project was expandable and would be further developed in a second phase.

During the summer of 1985, MHDC registered the Phase I declaration with the New Hampshire Attorney General's office in accordance with N.H. Rev. Stat. Ann. § 356-B:51 (1995).  On October 14, 1985, that office issued its certificate of registration for Phase I, permitting MHDC to sell Phase I units.  On October 22, 1985, MHDC recorded the Phase I declaration at the Carroll County Registry of Deeds.  MHDC began conveying Phase I units on December 16, 1985.

The declaration concerning the second phase of development ("Phase II") described the construction of 21 additional eight-unit buildings.  On October 15, 1985, MHDC registered the Phase II declaration with the New Hampshire Attorney General's office in accordance with N.H. Rev. Stat. Ann. § 356-B:51 (1995).  On

December 31, 1985, that office issued its certificate of registration for Phase II, permitting MHDC to sell Phase II units. On March 24, 1986, MHDC recorded the Phase II declaration at the Carroll County Registry of Deeds. MHDC began conveying Phase II units on February 7, 1986.

Both the Phase I and Phase II declarations contain identical language excepting and reserving certain property and easements at the Seasons. The declarations define the Seasons' common area as including "the water, sewage disposal, gas, electrical, and telephone systems serving the Condominium to the extent such systems are located within the Property and are not owned by the supplier of the utility service . . . ." (Defendant's Exhibit B, at 4.) Further, the declarations reserve "to [MHDC] . . . , its transferees, successors and assigns, a right of way in common with others [across] . . . all common area lands of the Condominium for the purposes of installing, laying, maintaining, repairing and inspection of any type of underground or above-ground utility lines or services, as such right of way typically is granted to utilities . . . ." (Defendant's Exhibit B, at A-2.)

On March 19, 1986, MHDC executed -- and on March 20, 1986, recorded -- an amendment to the Phase I declaration. The amendment expanded the Seasons to include the Phase II portion of the

3

development. The amendment, however, excepted from the property interests granted to the Seasons "the pipes, meters, and equipment as used by others for the purpose of supplying water and gas to the . . . condominiums along with [the] easements . . . . as needed for [the] same. . . ." (Defendant's Exhibit D.) Prior to recording the amendment, MHDC conveyed 15 units (all eight units in the Phase I development and seven units in the Phase II development) at the Seasons to individual purchasers.

B.   **Country Gas's Attempt to Acquire Title.**

On October 31, 1985, MHDC established a subsidiary corporation, Mountain High Water and Gas Sales, Inc. ("MHW&G"), for the purpose of selling LP gas to the Seasons. On November 20, 1986, MHDC requested clarification from the New Hampshire Public Utilities Commission (the "PUC") as to MHW&G's status as a public utility. The PUC responded that MHW&G did not need to register as a public utility. At some point not specified in the record, MHDC conveyed its interests in the gas system and the easements to MHW&G. However, the deed reflecting this transfer was lost prior to being recorded.

Prior to December 1986, it is unclear how MHW&G procured LP gas for the Seasons. In December 1986, however, MHW&G entered into a contract with Country Gas to supply LP gas to the Seasons.

4

MHW&G served as the entity which billed individual unit owners.

On June 21, 1988, Country Gas made an offer to the Association to supply gas directly to the Seasons rather than through MHW&G. Country Gas drafted a 12-year LP gas supply contract which included a provision that "Country Gas, Inc. will own the meters, regulators, and storage tanks[] [as well as] [a]ll [l]ines[,] e[a]s[e]ments[,] and misc[]ellaneous equipment[.]" (Defendant's Exhibit J.) On June 25, 1986, the Association and Country Gas executed the contract.

On June 30, 1988, MHW&G and Country Gas executed a contract for the sale of MHW&G's LP gas business at the Seasons to Country Gas, including the LP gas system at issue here. The LP gas system consists of 24 separate supply systems, one for each building constructed at the Seasons. Each separate supply system has an underground LP gas storage tank (into which gas is delivered by truck) as well as the pipes, meters, and regulators needed to supply the gas to the individual units within a building. On August 24, 1988, MHW&G conveyed title to the LP gas system and easements to Country Gas. However, Country Gas never recorded the deed.

On July 17, 1991, the Association informed Country Gas of the Association's belief that the Association rather than Country

5

Gas held title to the LP gas system and easements at issue here. Finally, on October 18, 1996, MHDC and MHW&G executed a confirmatory release deed meant to ratify and confirm the conveyance of the LP gas system and easements from MHW&G to Country Gas, and to ratify and confirm the conveyance of the same from MHDC to MHW&G by the earlier unrecorded deed.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); see Lehman v. Prudential Ins. Co. of Am., 74 F.3d 323, 327 (1st Cir. 1996).  A "genuine" issue is one "that properly can be resolved only by a finder of fact because [it] . . . may reasonably be resolved in favor of either party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).  A "material" fact is one that "affect[s] the outcome of the suit . . . ."  Id. at 248.  In ruling on a motion for summary judgment, the court construes the evidence in the light most favorable to the non-movant and determines whether the moving party is entitled

6

to judgment as a matter of law.  See <u>Oliver v. Digital Equip.</u>
<u>Corp.</u>, 846 F.2d 103, 105 (1st Cir. 1988).

Where the moving party bears the burden of persuasion at
trial, the movant must support its position with materials of
evidentiary quality.  See <u>Desmond v. Varrasso (In re Varrasso)</u>,
37 F.3d 760, 763 n.1 (1st Cir. 1994).  Further, "[The] showing
must be sufficient for the court to hold that no reasonable trier
of fact could find other than for the moving party." <u>Lopez v.</u>
<u>Corporacion Azucarera de Puerto Rico</u>, 938 F.2d 1510, 1516 (1st
Cir. 1991).  In an action to quiet title, the party moving the
court to do so bears the burden of proving it has superior title
as against the other interested parties.  See <u>Riverwood</u>
<u>Commercial Properties, Inc. v. Cole</u>, 134 N.H. 487, 490 (1991);
<u>Seward v. Loranger</u>, 130 N.H. 570, 574 (1988); <u>see also</u> <u>Frew v.</u>
<u>Dasch</u>, 115 N.H. 274, 278 (1975)(finding that each party to a
quiet title action has to independently prove the validity of his
title).  Because Country Gas bears the burden of proof on this
issue, the facts material to County Gas's claim must be undis-
puted and establish that it is entitled to prevail as a matter of
law.

7

### III.  **DISCUSSION**

Country Gas asserts that it possesses superior title to the LP gas system and easements because: (1) MHDC properly excepted the LP gas system from the declarations of condominium and likewise reserved an easement to access the system; and (2) Country Gas validly received title to the system and its easements through MHDC and its subsidiary MHW&G.[2]

The Association responds by arguing that Country Gas's quiet title claim must fail either because MHDC did not properly reserve title to the LP gas system and easements or because

---

[2]  Country Gas also argues that the Association is estopped from asserting a claim to an ownership interest in the LP gas system and easements.  Country Gas's estoppel theory rests on the argument that it detrimentally relied on the Association's acknowledgment -- contained in its June 25, 1988 contract with Country Gas -- to the effect that Country Gas owned the LP gas system.  In response, the Association asserts that Country Gas's equitable estoppel claim must fail either because Country Gas has not shown that it acted to its detriment based on representations made by the Association or because Country Gas's reliance on the Association's representations was not reasonable.

As Country Gas had constructive notice (via the declarations of condominium MHDC had duly recorded) regarding the strength or weakness of MHW&G's title, I find that its reliance on any representations made by the Association was not reasonable and, therefore, that Country Gas's estoppel argument holds little weight.  See Amoskeag Bank v. Chagnon, 133 N.H. 11, 14 (1990) (a purchaser is on constructive notice of any properly recorded interest in its chain of title regardless of whether or not the purchaser performs a title search).

Country Gas's interest in the equipment and easements was merely contractual in nature and expired with its contractual right to supply gas to the Seasons. I address each argument in turn.

In an action to quiet title, the party moving the court to do so bears the burden of proving it has superior title as against the other interested parties. See Riverwood, 134 N.H. at 490; Seward, 130 N.H. at 574. The movant bears this burden regardless of the validity or invalidity of the other parties' claims to title. See Frew, 115 N.H. at 278 (finding that each party to a quiet title action has to independently prove the validity of his title). Moreover, for a party to be entitled to judgment in its favor, it must show that "the probabilities tip in [its] . . . favor, so as to remove a resolution from the realm of conjecture." Frew, 115 N.H. at 277; accord Russell v. Emerson, 108 N.H. 518, 521 (1968) (evidence showing it is "more probable than otherwise" that plaintiff holds title to property satisfies plaintiff's burden of proof).

For Country Gas to carry its burden of proof, it must prove by a preponderance of the evidence that: (1) MHDC never transferred ownership of the gas system and related easements to the Association; and (2) Country Gas validly obtained title to MHDC's interest in the gas system and easements.

9

In making the claim that MHDC never transferred an ownership interest in the gas system and easements to the Association, Country Gas points to the language of the Phase I and Phase II declarations of condominium.[3] Regarding the exception of the gas system, the pertinent language reads:

> The Common Area [granted to the Seasons] consists of . . . the following [items including] . . . the water, sewage disposal, gas, electrical, and telephone systems serving the Condominium to the extent such systems are located within the Property and are not owned by the supplier of the utility service . . . .

(Defendant's Exhibit B, at 4.)  Regarding the reservation of the easements needed to access the gas system, the pertinent language

---

[3]  Country Gas also relies on MHDC's March 19, 1986 amendment to its Phase I declaration of condominium.  By statute, however, once any condominium unit is owned by anyone other than the developer, amendments to the declaration of condominium must be made by vote of the unit owners and in the name of the unit owners.  See N.H. Rev. Stat. Ann. § 356-B:34 (II) & (IV) (1995). Any amendment to a declaration of condominium is invalid where the statutory requirements governing such an amendment are not fulfilled.  See, e.g., Levy v. Reardon, 1997 WL 525576, at *4 (Mass. App. Ct. Aug. 27, 1997) (addressing the analogous Massachusetts statutory requirement) (an amendment of a condominium declaration is invalid where the developer did not obtain the required consent of the pre-existing condominium unit owners).
   In this case, by the time MHDC amended its declaration of condominium, MHDC had already conveyed 15 units to individual owners. (See Plaintiff's Exhibit 6.)  In addition, the amendment was made in MHDC's name rather than in the Association's name, and the Defendant offers no evidence that the unit owners ever voted to amend the declaration.  As the amendment appears invalid, I cannot rely on its language to support Country Gas's claim.

10

reads:

> FURTHER RESERVING to [MHDC], . . . its transferees,
> successors and assigns, a right of way in common with
> others over, under and above all common area lands of
> the Condominium for the purposes of installing, laying,
> maintaining, repairing and inspection of any type of
> underground or above-ground utility lines or services,
> as such right of way typically is granted to utilities
> . . . .

(Defendant's Exhibit B, at A-2.)  Because Country Gas's claims to the gas system and easements derive from different language in the granting documents, I will consider Country Gas's claims to the gas system and easements each in turn.

## A.  The Gas System

Country Gas claims that it owns the gas system because it purchased the system from MHW&G which, in turn, had acquired title from the system's original owner, MHDC.  The Association responds by claiming that MHDC transferred ownership in the gas system to it through the declarations of condominium before any attempt was made by MHDC to transfer ownership to MHW&G.  Thus, the Association argues that MHW&G's later attempt to sell the gas system to Country Gas was ineffective.  The resolution of this title dispute depends, therefore, upon whether the declarations of condominium purport to transfer ownership in the gas system to the Association.

11

The declarations of condominium provide that the Association shall own the gas system to the extent that it is "not owned by the supplier of the utility service." (Defendant's Exhibit B, at 4.) This language is unambiguous to the extent that if there were a pre-existing utility company with a vested interest in one of the utility systems described by the declarations, that company would own the system. See 23 Am. Jur. 2d, Deeds § 87 (1983) (where a third party already holds a vested interest in certain property, a grantor can validly except that property from what he conveys to the grantee). The language of the declarations is not clear, however, in describing whether such a utility company existed and, if so, the extent of such a company's holdings. See Ouellette v. Butler, 125 N.H. 184, 188 (1984) (finding a deed ambiguous where "no one could tell precisely how extensive or restrictive a right was [as] conveyed by the [deed] . . . .") Because the language of the term does not offer guidance as to the extent utility companies actually owned the utility systems located at the Seasons, and, conversely, how restricted the grant to the Association was, I must turn to extrinsic evidence to see if the intention of the grantor can be ascertained.

12

"In the case of an ambiguous instrument, the intent of the parties may be derived by reference to extrinsic evidence . . . [such as] the circumstances surrounding the conveyance."[4] Locke Lake Colony Ass'n, Inc. v. Town of Barnstead, 126 N.H. 136, 139 (1985). The court may also look to the subsequent conduct of the parties to a deed as a strong indication of the construction which they placed on the exception contained in the deed. See 23 Am. Jur. 2d, Deeds § 321 (1983). For instance, in order to determine the intent of a developer and, thus, the meaning of an ambiguous term in a declaration of condominium, the Locke Lake Colony court examined documents extrinsic to the declaration

---

[4] It is true that an uncertain term in a deed must be construed against the grantor and in favor of the grantee. See Kennett Corp. v. Pondwood, Inc., 108 N.H. 30, 34 (1967). Yet, because of the importance the Supreme Court of New Hampshire has attached to determining the intentions of the parties to a deed, a term is resolved against a grantor only where the term is so uncertain that its meaning cannot be determined by the ordinary rules of construction used in interpreting a deed. See Frew, 115 N.H. at 277 (although "there [may be] . . . substantial conflicts and remarkable gaps in the evidence," a court must strive to give effect to the language of the deed); Fagan v. Grady, 101 N.H. 18, 22 (1957) (in interpreting a deed, "[t]he ultimate issue [is] . . . not whether [a certain landmark] . . . could now be found, but what was the intent of the parties to the conveyance . . ."); 26 C.J.S., Deeds § 140(2) (1987) (giving the benefit of the doubt to the grantee is resorted to only when a satisfactory result cannot be reached by other rules of analysis and construction). I must, therefore, examine the deed according to the rules of construction used by New Hampshire courts in order to determine whether the gas system was excepted from MHDC's grant to the Association.

13

itself as well as the way in which the parties to the declaration construed the declaration subsequent to its enactment.  126 N.H. at 139 (the articles of incorporation, condominium by-laws, and actions of a developer in marketing condominiums help determine what the intent of the developer was in drafting the declaration of condominium).

In Locke Lake Colony, the court found the evidence contained in certain extrinsic documents and the behavior of the parties subsequent to the conveyance to be determinative of the intent of the developer in drafting the term at issue and, thus, of the meaning of the term.  Id. (an examination of the record and the circumstances surrounding the conveyance allow an interpretation of the language of the document).  Significantly, the court found that the developer's use of the development's common property as a marketing tool to attract purchasers offered strong proof that the developer intended to grant purchasers an ownership interest in the development's common property rather than a mere license to use it.  Id.

In the case at hand, documents extrinsic to the declarations and the behavior of the parties subsequent to the conveyance are likewise determinative of the developer's intent in drafting the term at issue and, thus, of the meaning of the term.  MHDC's

14

establishment of MHW&G as a subsidiary corporation -- with the stated purpose of selling LP gas -- occurred just nine days after MHDC recorded its Phase I declaration and well before MHDC conveyed any individual units.  (See Defendant's Exhibit G; Plaintiff's Exhibit 6.)  In addition, MHDC sought a clarification from the PUC as to whether it needed to register MHW&G as a public utility.  (See Plaintiff's Exhibit 8.)  The proximity of MHW&G's incorporation to the recording of the Phase I declaration and the fact that MHDC sought a clarification from the PUC as to MHW&G's status as a public utility indicate that at the time MHDC drafted the Phase I declaration of condominium, MHDC contemplated that it would maintain control of the gas system at the Seasons through a subsidiary utility corporation.

Further, it is customary in the LP gas industry for LP gas companies to maintain ownership of their gas system equipment. (See Plaintiff's Exhibit 15, ¶ 3 (Affidavit of Robert Hatch) ("It is usual and customary within the industry for the LP Gas supplier to install and retain ownership of the storage and distribution equipment external to a customers [sic] building.")) This industry practice in combination with MHDC's contemporaneous creation of a subsidiary utility corporation for the control of

the gas system indicate that MHDC never intended to transfer ownership of the gas system to the Association.

Finally, the behavior of both MHDC and the Association at the time the gas system was sold to Country Gas reinforce the inference that MHDC contemplated MHW&G would be the owner of the gas system at the time MHDC drafted the declarations of condominium. The fact that MHW&G offered Country Gas a deed to the system and the fact that the Association acknowledged Country Gas as the owner of the system both indicate that, more probably than not, the parties understood MHW&G was the owner of the gas system and possessed the power to convey it to Country Gas.

From an examination of the relevant evidence extrinsic to the deed, I find that the term excepting the gas system from MHDC's grant to the Association is not so uncertain as to be void but, rather, can be interpreted so as to give effect to the intention of the parties. Such an examination indicates that it was not the intent of MHDC to grant the Association a property interest in the gas system but, instead, that MHDC intended to maintain control of the gas system by transferring ownership of the system to MHW&G. The fact that MHDC did not incorporate MHW&G until after recording the Phase I declaration should not defeat this intent, especially where MHDC created MHW&G well in

16

advance of selling units to individual owners.

For Country Gas to carry its burden of proof in establishing the superiority of its title to the gas system, however, Country Gas must also show that it validly received title to MHDC's interest in the gas system. In other words, Country Gas must prove that MHDC transferred title to MHW&G and that MHW&G transferred title to Country Gas.

Although Country Gas received a deed to the gas system from MHW&G (see Defendant's Exhibit M), Country Gas has not been able to produce the original deed by which MHDC conveyed the gas system to MHW&G. Country Gas submits instead the October 18, 1996 confirmatory release deed (see Defendant's Exhibit O) in which MHDC confirms and ratifies that MHDC had transferred its interest in the gas system to its subsidiary MHW&G but that the instrument of conveyance was lost or misplaced prior to being recorded.

"In New Hampshire, when a party attempts to establish the conveyance of property by an instrument lost by time and accident, evidence of the content and effect of the lost instru- ment cannot be given until it is established that such an instrument existed, fulfilled the formalities required by law, and . . . was lost." Riverwood, 134 N.H. at 491. Where the

17

prior owner of certain land states that he had sold the land to the party claiming title to it, this test is satisfied. Id. at 491-92. Because MHDC has done as much through the October 18, 1996 confirmatory release deed, I find that the evidence offered by Country Gas suffices to establish it received title through MHDC and MHW&G.

Moreover, I do not find the Plaintiff's argument persuasive that because MHDC was a dissolved corporation at the time it issued the confirmatory deed, MHDC did not have the power to issue that deed. Rather, under N.H. Rev. Stat. Ann. § 293-A:14.05 (Supp. 1996), I find that the because the purpose of the deed was to help MHDC wind up and liquidate its business and affairs, MHDC did have the power to issue such a deed despite its liquidated status. Consequently, I find that title to the gas system rests in Country Gas.

B.  **The Utility Easement**

The declarations of condominium reserve to MHDC as well as its "transferees, successors and assigns" a right-of-way to maintain, repair, and inspect utility services. I have already determined that Country Gas has an ownership interest in the gas system. Country Gas's right to enter the Seasons for the purpose of tending to that system necessarily follows Country Gas's

18

ownership of it.

## IV. __CONCLUSION__

For the reasons stated above, I grant Country Gas's motion for summary judgment with respect to the quiet title claim and deny the Association's cross motion on the same issue.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

September 30, 1997

cc:  Randall F. Cooper, Esq.
     Ralph Holmes, Esq.